MARIA L. WOLCOTT *et al.*

*v.*

GEORGE B. HEATH.

1. EVIDENCE—*proof book account.* Where a witness testified, without objection, in regard to items of an account, many of which he personally knew to be correct at the time they were entered in the books of his employer, years before, but could not remember as to dates and amounts, except by reference to the books, it was error to instruct the jury to disregard all his testimony based upon the books, and upon such matters as he stated he only knew from the books.

2. INSTRUCTION—*should not assume facts.* It is error to instruct the jury that if they believe, from the evidence of a particular witness, that all his knowledge of a fact testified about by him is derived from the books of the party calling him, and if they find that the testimony of such witness is all the evidence on that subject, then there is no evidence before them as to that fact.

3. TIME CONTRACTS—*not unlawful.* Time contracts, made in good faith, for the future delivery of grain or other commodity, are not prohibited, either by the common law or statute.

4. CONTRACTS AGAINST PUBLIC POLICY—*repudiation.* If a party repudiates a contract on the ground that it is unlawful, he must repudiate all contracts of the like kind with the same party. He can not claim the benefit of such as are profitable and repudiate those that are unprofitable.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. N. J. PILLSBURY, Judge, presiding.

Messrs. WOOD & LOOMIS, for the plaintiffs in error.

Messrs. BLADES, KAY & EVANS, for the defendant in error.

28—78TH ILL.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

Although this action was commenced in replevin, by stipulation the controversy has exclusive relation to the state of the accounts between the parties. It was agreed, if it should be found, on the trial, that plaintiff was indebted to defendants in a sum exceeding $501.85, judgment should be rendered in their favor, and against plaintiff, for any sum in excess of that amount; otherwise, judgment was to be for plaintiff. The jury found the issues for plaintiff, and defendants bring the cause to this court on error.

The verdict in this case can not be regarded as settling any of the controverted facts, on account of the erroneous instructions given on behalf of plaintiff. All of them are, more or less, faulty, and were calculated to mislead the jury on the issues involved.

The court directed that all the testimony of Wolcott based upon the books only, and upon such matters concerning which he states he only knew from the books, should be disregarded. Under the circumstances proven, the charge was erroneous. The testimony of the witness had been given as to the controverted facts without objection. Many of the items on the books to which his testimony had reference he knew, of his personal knowledge, were correct at the time the entries were made, but, as to the dates and amounts of the several transactions which had transpired years before, although he still remembered distinctly the transactions, it was not possible for him to state except from the daily entries upon the books. Defendants were commission merchants in Chicago, and the proof is, they did an immense amount of business each year, and with a very great number of customers. The transactions with plaintiff were numerous, and extended through a series of years. A witness who would state that he could tell, from his memory, unassisted by books or other memoranda, the exact amount of each kind of grain a firm doing

such a business would or did purchase and sell in any number of years, and at what prices to each customer, would doubtless be considered unworthy of belief. Constant changes were taking place in the market prices of the various kinds of grain in which they were dealing, within brief periods, and perhaps every day. Any one who would claim to remember all these changes, so as to testify to them in after years, would hardly be credited as a candid witness. Books in which daily entries of such transactions are made, are legitimate sources of information as to amounts, dates and current prices, from which the witness may, with propriety, refresh his recollection, and to exclude testimony derived from that source is to cut off the only channel of information as to important facts.

The jury were also instructed, if they should find, from the testimony of Wolcott, that all he knew about the price of oats and the amount of loss upon them, he only knew from the books, and if they found that was all the evidence as to the oats, then they had no evidence before them as to the amounts of the purchases and sales of oats, nor of any loss upon them, and as to that matter they should find for plaintiff. A like charge was given as to purchases, sales and losses on corn.

These instructions are subject to the same criticism as the first, but are erroneous for another reason. It is assumed, if all the information Wolcott had as to the purchases and sales of corn and oats, and losses thereon, was derived from the books, the jury had no other evidence on the questions before them. Whether that was so, was a question for the jury, upon which the court could not, with propriety, express any opinion; but the assumption has no foundation in fact. There was evidence in the case, independent of the testimony of Wolcott, as to the purchases and sales of both corn and oats, and losses thereon, and the jury ought to have been left free to pass upon it.

The real controversy between the parties was as to profits

and losses on the purchases and sales of grain. Plaintiff insists he never had any dealings with defendants but grain transactions. His place of business was in the country, and defendants were his commission merchants in Chicago. He shipped grain to them, which they sold on his account for a commission. At plaintiff's request, defendants bought and sold grain for him on the board of trade in Chicago. When profits were realized, plaintiff was credited with them, and when losses occurred, he was charged with them. All the disputed items between the parties grew out of the transactions on the board of trade. So far as grain was shipped to defendants from the country, and by them sold on account of plaintiff, there does not seem to be any controversy. These transactions continued through a series of years, during all which time defendants rendered plaintiff monthly detailed statements of the accounts, with which he generally expressed himself well pleased.

Plaintiff now insists the alleged purchases and sales made by defendants, for him, on the board of trade, were all fictitious; that no grain was in fact bought or sold, and hence all the contracts in relation thereto were void, under the common law, as being inhibited by a sound public policy. Whatever these contracts were, they were not made between plaintiff and defendants, but by defendants, as agents for plaintiff, with third parties, on the board of trade. The indebtedness to defendants consists of advances made by them in those transactions for plaintiff, at his request and upon his express promise to reimburse them. We will not, at this time, discuss the question whether the agents would be debarred from recovering from their principal for advances made at his request, if it be conceded the enterprises in which the principal was engaged were so far unlawful that contracts in regard thereto could not be enforced. The evidence in this record is by no means conclusive that the contracts for grain, made by defendants for plaintiff, were unlawful. They were made in the regular course of business, and, for anything that

appears in this record, they could have been enforced in the courts. It is true, they were time contracts—that is, the seller had all of the month in which to deliver the grain; but the testimony of Wolcott is, they were *bona fide* contracts for the actual purchase of the grain. The only option the seller had was as to the time of delivery. The obligation was, to deliver the grain at all events, but it was the seller's privilege or option to deliver it at any time before the closing of business on the last day of the month. Time contracts, made in good faith, for the future delivery of grain or any other commodity, are not prohibited by the common law nor any statute of this State, nor by any policy beneficial to the public welfare. Such a restraint would limit commercial transactions to such a degree as could not but be prejudicial to the best interests of trade. Our present statute was not in force when these dealings were had; consequently the rights of the parties are not affected by it. What the law prohibits, and what is deemed detrimental to the public interests, is, speculations in differences in market values, called, perhaps, in the peculiar language of the dealers, "puts" and "calls," which simply means a privilege to deliver or receive the grain, or not, at the seller or buyer's option. It is against such fictitious, gambling transactions we apprehend the penalties of the law are leveled.

But to find the present verdict, the jury must have given plaintiff credit for all the profits realized on the advantageous contracts and allowed defendants nothing where losses occurred for their advances made for him. This they were not authorized to do. If the contracts made by defendants, on behalf of plaintiff, were such as plaintiff could repudiate, because unlawful, he must repudiate all of them, or none. He could not be permitted, in any event, to appropriate to himself the profits of such contracts as were to his advantage, and disavow all others.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*