81  415
59a 144

### BENJAMIN F. LOGAN

*v.*

### MUSICK & BROWN.

1. CONTRACT—*of sale of grain for future delivery not prohibited by statute.* The statute does not prohibit a party from buying or selling grain for future delivery, nor does it make any difference as to the legality of the contract, whether the party selling for future delivery has the grain on hand at the time of such sale or not.

2. OPTIONAL CONTRACT. A contract for the sale of grain for future delivery, whilst it may give the purchaser an option to select a day within a limited time on which he will receive the grain, does not constitute such an option to buy at a future time as is prohibited by the statute.

WRIT OF ERROR to the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

Mr. J. H. ROWELL, and Messrs. BEASON & BLINN, for the plaintiff in error.

Messrs. HOBLIT & FOLEY, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This action was brought by Musick & Brown against Benjamin F. Logan, to recover money paid by them to cover losses on grain purchased on the board of trade in Chicago, for the defendant, on his order.

A trial was had before a jury, which resulted in a verdict in favor of the plaintiffs for $2206.25. The court overruled a motion for a new trial and rendered judgment on the verdict.

Several errors have been assigned upon the record, but we understand the defendant relies upon three points to reverse the judgment:

1st. That the plaintiffs failed to sell grain as agreed, and on account of the failure they became indebted to the defendant in a larger sum than they advanced for him.

2d. The judgment is too large, in any event, in the sum of $1162.

3d.   That the advances sued for by the plaintiffs were made on account of gaming contracts in grain, are in violation of the statute, and can not be recovered.

The plaintiffs were engaged in the commission business in Chicago; they purchased for the defendant, at his request, twenty thousand bushels of wheat for June delivery, and ten thousand for July delivery.   The wheat was sold at a loss of about $3406.25; the defendant had paid as a margin $1200. Thus far there seems to be but little dispute in relation to the facts; but on the 24th day of May, 1875, the defendant went to Chicago, and called upon Musick, one of the plaintiffs, and, as he testifies, made an arrangement to have him that morning sell for him on the board of trade the twenty thousand bushels of wheat which had been purchased for June, and also "sell short" twenty thousand bushels more.   This was done with the view, as wheat was then declining, to save the loss on the wheat previously bought.

The two went together to the board of trade.   The defendant testifies that no restrictions were placed upon the plaintiff as to price, but he was to sell on the market.   The result, however, was the sale of ten thousand bushels only, and hence the defendant claims a large loss in profits, which he would otherwise have made had the plaintiff made sale of forty thousand bushels, as he had agreed.

Musick, however, testifies that he sold ten thousand bushels at $97\frac{1}{4}$ a short time after he arrived at the board of trade, and reported the sale to the defendant, who then instructed him to sell no more at less than 98c., and on this account no more wheat was sold.

Here was a direct conflict in the evidence, which it was the province of the jury to settle; and while it is true there was some evidence tending to corroborate the defendant's version of the transaction, yet there was no such clear preponderance of the testimony in his favor on this point as to authorize an appellate court to disturb the verdict of a jury, who have the witnesses before them, and have many facilities for determining

the degree of credit that should be given to a witness, that an appellate court does not possess.

The ten thousand bushels of wheat purchased for July delivery, was sold at a loss of $1162.50. This item formed a part of the plaintiffs' judgment, and it is urged that no recovery can be had for this loss, for the reason the plaintiffs sold the wheat wrongfully on a rising market, when the purchase was fully protected by an ample margin.

This lot of wheat was purchased by the plaintiffs by the order of the defendant, sent to them through the firm of Boyden & Barrett. The position taken by the defendant is, that Boyden & Barrett put up a margin of $1800 for him on this purchase; but the only evidence bearing upon this question, is that of Mark W. Barrett; he says his firm purchased, through the plaintiffs, twenty thousand bushels of wheat for July—ten thousand for themselves, and ten thousand for the defendant. He also says, that $1800 was put up by the firm on the purchase, but what portion, if any, was put up for the defendant does not appear. While the evidence of this witness is difficult to understand, and the precise nature of the arrangement between him and the defendant is left in doubt, from his testimony, yet we can not infer, from anything he testified, that the plaintiffs ever gave the defendant any credit for money in this transaction, or that they were ever directed or requested to do so, or that they ever had any knowledge that the funds paid them by this firm were to be used as margins for the defendant on any wheat purchased for him.

The defendant, when on the stand as a witness, did not pretend that he had put up any margin except the $1200, with which he was credited on general account.

The plaintiffs testified, they had only received $1200. So far as the evidence of the plaintiffs and defendant is concerned, there is no substantial difference on this point. Neither seems to claim or pretend that any advances had been made by Logan as a margin on purchases, except the $1200.

If it be true, as now insisted, that $1800 had been paid for Logan to the plaintiffs to protect the purchase of the July

27—81ST ILL.

wheat, it seems strange that he could not, in his evidence, give the jury some account of it.

In view of all the evidence, we are not prepared to say the jury erred in the amount of the verdict.

It is, however, claimed by the defendant that the contracts for the purchase of the wheat were void under the statute, as gambling contracts, and for that reason the judgment can not be sustained.

The statute declares that whoever contracts to have or give to himself or another the option to sell or to buy at a future time, any grain, etc., shall be fined in a certain sum, or confined in the county jail, etc.; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void. Revised Statutes of 1874, 372, sec. 130.

In order to determine whether the contracts in question fall within the statute, a brief reference to the evidence bearing upon this point is necessary.

The defendant, in answer to certain questions, stated, "Tell the jury what you contracted with them to buy for you?

No. 2 spring wheat.

Did you, in any of your letters or dispatches, instruct them to buy the privilege of purchasing in the future?

No, sir; I instructed them to buy No. 2 spring wheat.

Did you, in any of your letters or telegrams, or in any instructions to Musick & Brown, instruct them to purchase for you the right to purchase in the future?

No, sir; it was No. 2 spring wheat.

They purchased 40,000 bushels of No. 2 spring wheat for you?

30,000.

You instructed this purchase to be made?

Yes, sir.

You contracted for No. 2 spring wheat?

Yes, sir."

Mr. Musick, one of the plaintiffs who purchased the grain, stated that the orders given were, not to buy options, but grain, and if the grain had been called for by the defendant it would have been forthcoming.

It is clear from this proof that the parties were not dealing in options, but that the plaintiffs were instructed to buy for the defendant a certain quantity of grain for future delivery, and actually bought it. Under the contracts made, Logan did not have the option to buy, but he actually purchased, and if he failed to take the grain at the time he was to receive it, he would be bound to respond in damages. So with the parties of whom the grain was bought; they did not have an option to sell, but actually sold the grain, and were bound to deliver it at the time specified, or, on failure, would be liable in damages.

The statute does not prohibit a party from selling or buying grain for future delivery; such was not the purpose of the statute; nor can it make any difference as to the legality of the contract, whether the party who sells for future delivery, at the time the sale is made has on hand the grain; a party may sell to day a certain quantity of grain for delivery in a week or a month hence, and then go upon the market and buy the grain to fill the contract. It is true, the defendant had the option, under the contract, to select a day within a limited time on which he would receive the grain; but such an option does not fall within the statute, for the reason that it does not render the sale optional.

We are, therefore, satisfied that the contracts did not fall within the statute, and we perceive no reason why they should not be enforced.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*