GILBERT (BENCHLEY v.). See Case No. 1,291.

GILBERT (CLARK v.). See Case No. 2,822.

GILBERT (CUTTING v.). See Case No. 3,-519.

---

### Case No. 5,412.

GILBERT et al. v. GAUGAR et al.

[8 Biss. 214;[1] 10 Chi. Leg. News, 340.]

Circuit Court, N. D. Illinois. June, 1878.

TIME CONTRACTS—STATUTE CONSTRUED — ADJUSTING DIFFERENCES—LIABILITY OF CUSTOMER TO BROKER.

1. The Illinois statute (Rev. St. c. 38, § 130) was not intended to prohibit sales of grain or other commodities for future delivery where the seller reserves to himself a simple option as to the time of delivery within certain limits.

2. If one makes a contract to deliver grain during a future month at a fixed price, and by reason of the adverse aspect of the market, directs his brokers to settle with the purchasers before the maturity of the contract. this does not make the contract void as a gambling transaction, and he is liable for the differences paid by the brokers in his behalf as well as for their commissions.

[Cited in Ward v. Vosburgh, 31 Fed. 15.]

[Cited in Wall v. Schneider, 59 Wis. 359, 18 N. W. 446.]

Plaintiffs [George I. Gilbert and others], who were brokers and commission men on the Chicago Board of Trade, composing the firm of Gilbert, Wolcott & Co., brought this action to recover from defendants [William T. Gaugar and others], their principals, for

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

commissions earned, and losses paid by plaintiffs in settlement of time contracts for the sale of grain by plaintiffs for account of defendants. The facts, about which there was no dispute, were, that during the year 1874, plaintiffs were engaged in business as commission merchants and brokers, in this city, and members of the Board of Trade. The defendant, Gaugar, was engaged in business at Kankakee, in this state, as a buyer and shipper of grain; defendant Holmes also resided in Kankakee. Prior to August, 1874, plaintiffs had made several transactions on the board of trade for Gaugar, some of the contracts to sell for future delivery being filled by shipments of grain from Gaugar, and others being settled by adjusting the differences with the purchasers. A short time prior to August, 1874, Gaugar requested plaintiffs to sell some corn on the board, for future delivery, and stated that defendant Holmes would take a half interest in the transaction. On the 3d of August, Holmes was in Chicago, and, pursuant to the arrangement made with Gaugar, ordered plaintiffs to sell for the joint account of himself and Gaugar, ten thousand bushels of corn for delivery in the month of September, the seller having the option to deliver at any time during the month of September. The plaintiffs on the same day, pursuant to direction, sold to Hurlbut & Co., ten thousand bushels of corn for September delivery, at 63⅛ cents per bushel. This transaction was afterward, by consent of all parties, changed to a sale for October delivery, and on the 9th day of September, plaintiffs, by order of defendants, sold to W. E. Furness another ten thousand bushels of corn for October delivery, at 78⅞ cents. The market continued to advance, and on the 18th of September, plaintiffs, by order of defendants, closed the transaction by buying from Hurlbut & Co. ten thousand bushels of corn, of Trego & Smith, 5,000 bushels, and 5,000 bushels of McDermid & Oertel, all for October delivery; and with the corn so bought filled the contracts of sale theretofore made. At the time of the sale to Hurlbut & Co., plaintiffs had no corn on hand representing that transaction, and it does not appear that Hurlbut & Co. delivered any corn to plaintiffs on the September purchase. The loss on the two transactions was $1,856.25, and plaintiffs charged for their commission $100, making a total loss by defendants. for differences paid by plaintiffs and plaintiffs' commissions, of $1,956.25. Of this amount, defendants repaid plaintiffs $825. leaving a balance of $1,131.25 unpaid, for which this suit was brought. No corn was ever shipped by Gaugar to plaintiffs to fill either sale, but plaintiffs were ordered by defendants to close out the transaction on the Board of Trade on the best terms they could. The contracts of sale were substantially in the following form:

Grain contract: "Chicago, Aug. 3, 1874.— We have this day bought of George I. Gilbert & Co., ten thousand bushels No. 2 corn,

in store, at 63⅛ cents per bushel, to be delivered at sellers' option during the month of October, 1874, in lots of five thousand bushels each. This contract is subject in all respects to the rules and regulations of the Board of Trade of the city of Chicago. Hurlbut & Co."

Grain contract: "Chicago, Aug. 3, 1874.— We have this day sold to Hurlbut & Co., ten thousand bushels No. 2 corn, in store, at 63⅛ cents per bushel, to be delivered at sellers' option, during the month of October, 1874, in lots of five thousand bushels each. This contract is subject in all respects to the rules and regulations of the Board of Trade of the city of Chicago. George I. Gilbert & Co."

J. L. High, for plaintiffs.
C. H. Wood, for defendants.

BLODGETT, District Judge. The fair conclusion from the admitted facts, I think, is that one transaction was made to settle and adjust the other. In other words, the differences between the prices at which the sales were made and the prices of the purchases, were settled, and the plaintiffs paid the losses to the buyers.

The sole defense made, is, that the transaction falls within the option contract law of this state (Rev. St. c. 38, § 130), and is void as a gaming contract. The language of the statute is: "Whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain, etc.," shall be fined. "And all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

This statute has been several times before the supreme court of this state for construction, and the uniform ruling, so far as I have been able to learn from adjudged cases brought to my notice, has been that the statute was not intended to prohibit sales of grain or other commodities for future delivery. The statute prohibits "options to sell or buy"—not sales where the seller reserves to himself a simple option as to the time of delivery within certain limits: Wolcott v. Heath, 78 Ill. 433; Pixley v. Boynton, 79 Ill. 351; Logan v. Musick, 81 Ill. 415; Corbett v. Underwood, 83 Ill. 324; Rumsey v. Berry, 65 Me. 570, gives the same construction to a statute similar to ours, by the supreme court of Maine.

Lyon v. Culbertson, 83 Ill. 33, and Pickering v. Cease, 79 Ill. 328, would seem at first to hold a different doctrine, but a careful examination of those cases shows that the court proceeded upon the fact found, that neither party expected, at the time the contracts were made, to deliver any wheat, but only to adjust or settle differences. These two cases also differ from this in other important features. In both those cases the suits were directly between the parties to the contracts, and the court held them to be gaming contracts, because it was found as a fact that neither party intended to sell or buy the wheat, but only to speculate in differences, transactions which the court held were contrary to public policy, and therefore void. And while it may be well, as a matter of public policy, to prevent parties from gambling by refusing to enforce gambling contracts between them, yet it is, at least doubtful whether they should be allowed to gamble at the expense of others, and not pay those whom they employ to do the work, and who advance money for them.

The obvious intent of the Illinois statute is to prohibit dealing in what are familiarly called "puts" and "calls," which are mere options to sell or buy; a class of contracts which the district court of this district had held void before the statute was enacted. Ex parte Young [Case No. 18,145]. But in that case the court took pains to say: "I do not intend to be understood as holding that every option contract for the delivery of grain or stock, or that every 'put' is necessarily void, but only that all these contracts, in the light of the testimony before the court, were, in their essential features, gambling contracts. The parties, when they made them, did not intend to deliver the grain, but only at the utmost to settle the differences," thus clearly distinguishing that case from this. But even under the English acts for the prevention of stock jobbing, it was held that when a broker had paid money on defendant's account, to compromise or settle differences for not delivering stocks, the broker could recover from the principal. Faikney v. Reynous, 4 Burrows, 2069; Petrie v. Hannay, 3 Term R. 418; Knight v. Cambers, 15 C. B. 563, 80 E. C. L. 561; Jessopp v. Lutwyche, 10 Exch. 614; Rosewarne v. Billing, 15 C. B. (N. S.) 316, 109 E. C. L. 316.

As early as 1857 the learned circuit judge of this circuit held that a contract substantially like the ones under consideration was valid: Porter v. Viets [Case No. 11,291]. So in Lenman v. Strassberger [Id. 8,216]; Judge Woods, of the Fifth circuit, sustained a cause of action almost identical with this. But the most full and exhaustive discussion of the question which I have met, is found in the case of Clarke v. Foss [Id. 2,852], by the learned district judge of the Western district of Wisconsin, and the doctrine of that case fully sustains the plaintiffs' right of recovery in this case. To further discuss the questions raised here, after the full examination they have received in the two cases last cited, seems to me unnecessary.

I therefore conclude that the contracts made by plaintiffs, in defendants' behalf, were not options to sell or buy, but lawful contracts to deliver corn at a future day, upon which defendants might have been liable for the difference between the price at the time at which they sold and agreed to deliver, and the market price at the maturity of their contract. And if, by reason of the

adverse aspect of the market, they directed the plaintiff to settle with the purchasers before the maturity of the contract, they are liable for the differences paid by the plaintiffs in their behalf, as well as for plaintiffs' commissions.