## M. MARX v. J. H. ELSWORTH.

(March 13, 1880.)

ILLEGAL CONTRACTS.— Dealing in futures; agency, how proven; ratification; brokerage contracts.

APPEAL from Galveston county. Opinion by WALKER, P. J.

STATEMENT.— It does not appear that the demurrer and special exceptions of the defendant to the plaintiff's petition were presented to the court for determination, and, therefore, the questions presented in them will not be considered. The plaintiff's petition set forth, for all the purposes of rules of proceeding applicable to trials of issues between the parties before the jury, a good cause of action, the gist of which was the alleged breach of contract made by the defendant's alleged agent. The contract relied on was alleged to be one for the sale to plaintiff, and the resale for his account, of three hundred thousand pounds of bacon; that in pursuance thereof, he, the plaintiff, complied with his part of said contract, and that the defendant, through his said agent, in December, 1877, reported to plaintiff the resale of all of said bacon at a large profit to him, said plaintiff. Plaintiff alleged that by the terms of said contract the defendant agreed to hold said bacon and sell the same in St. Louis on the 15th day of October, 1877, or as soon thereafter as possible; that by the terms of the contract, after allowing plaintiff the commissions stipulated in his favor, and taking the market price of bacon at St. Louis on said 15th of October as the standard of value and measure of defendant's liability, in the absence of a specific report of sales, which it is implied by the plaintiff's allegations he supposes to have been actually made as referred to in the aforesaid report of Villavassa in December, 1877, in the general terms before quoted, the plaintiff, proceeding to allege failure to pay him the amount thus due him upon the foregoing basis, alleging demand, refusal. etc., prays

judgment for the amount sued for, to wit, $4,566.25; and he also prays judgment for all damages sustained by reason of the premises stated in his petition, and for other, further and general relief.

The answer was general denial that the contract was a gambling one, without consideration and against public policy, and also denial of the agency of Villavassa to make such a contract; the answer contained special traverses of divers material allegations of plaintiff's petition, which need not be set out for the purposes of the reference which is now being made to the issues between the parties.

Under the assignment of errors, which submits eleven grounds, they all consist in complaints made either to what is contained in the charge of the court, or in the refusal of the court to give instructions asked by the plaintiff, supplementary to or negativing the propositions contained in the charge of the court; whence it follows that if the evidence before the jury was of such a character as rendered the charges given and refused material to the proper determination of the case, that, inasmuch as all the charges which were requested to be given were refused, and that the plaintiff has not been delinquent in failing to ask for the instructions as to the law, as contended for by him, that unless in all those respects, wherein the plaintiff has thus asked instructions, the charge of the court has, under the evidence, sufficiently submitted the law applicable to the issues, such refusal of plaintiff's instructions would be erroneous, and whether a reversal of the judgment would ensue therefrom would depend on whether it appears from the record that injustice may have resulted therefrom.

OPINION.— The charge of the court rendered both prominent and obnoxious the subject of gambling contracts as applied to the facts of this case; the charge defines also in what consists a gambling contract, as has been seen from the reading of the general charge. If such contracts as the court defines to be gambling contracts be in fact illegal

under the laws of Texas, still if the general definition contained in the charge should be conceded to be abstractly considered correct, nevertheless, in its application to the testimony in the case, it was urgently at issue whether the plaintiff participated in any other intent than a lawful one, whatever may have been the meaning or intention of Villavassa, with whom the contract was made. The language of the charge of the court is: " But where the transaction is of such a nature that the parties do not expect any real delivery of the articles, but simply estimate their profits and loss at the quotation prices at the future stipulated time, as compared with the price at the time of making the contract, the law regards all such contracts as mere gambling in futures, and treats them as null and void, as contrary to public policy."

The only testimony in the case to establish the contract as it was made was that of the plaintiff himself, which emphatically disclaims the making of any such contract as that which is thus denounced by the charge of the court; nor is there in the nature of the contract, as alleged by the petition, nor as developed by evidence, the elements of a gambling contract according to the definition of such as given in the charge; and the charge given to the subject would be otherwise inapplicable to the evidence, unless, notwithstanding the testimony given in relation thereto, it is to be left to construction by the jury to determine whether, notwithstanding the forms of words and terms, that one or both of the parties to the contract meant that there should be, in fact, neither actual sale nor resale. Whether it was proper, under the evidence, to give a charge at all on such a hypothesis need not, at this time, be discussed, but it is sufficient to say that if it was, nevertheless, in view of the emphatic allegation in pleading and evidence to the contrary by the plaintiff, so far as such illegal intent related to his participation in the making the contract, he was entitled to have the whole law applicable to the supposed illegal contract fully given so as to afford him, dis-

tinctly, its benefits in case the jury saw proper to give
credit to his statements in respect to the matter. The con-
ditions and qualifications to the general charge which were
embraced in the plaintiff's ninth charge refused were perti-
nent in the above connection. The general proposition of
the charge defining gambling in futures, supposing it to be
sufficiently accurate and definite as a definition when ap-
plied to the evidence in this case, allows, certainly, of the
possibility that, in the first place, it was no such contract,
and in the next, if it was so meant and intended by Villa-
vassa, that it may not have been so by the plaintiff. It is
true that the general charge does imply, by its terms, a re-
quirement for mutuality of intent in respect to the making
of such an illegal contract, and if it was proper to charge
on the subject of gambling contracts at all, unless the
plaintiff had asked further instructions to supply the want
of fullness of exposition of the law applicable to the evi-
dence, he could not complain, but the defect in the general
charge, which has been thus pointed out in the instructions
asked, was apposite to the essential and material issues and
the evidence towards which the general charge was aimed.
The instruction asked was to the effect that the fact that
the seller does not own the article at the time he sells for
future delivery does not make the contract illegal; and
that the fact that one party intended to gamble and not to
secure or deliver the article does not make it illegal, but to
be a gambling contract both parties must agree that there
is to be no delivery.

The general charge of the court does not present, unless
inferentially, this material point of mutuality of minds of
both parties as essential elements of its invalidity as a gam-
bling contract. The propositions contained in the charge
asked for and refused are maintained by abundant author-
ity. Clark v. Foss, 7 Biss., 540; Lehman v. Strasberger, 2
Wood (U. S. C. C.), 562; Gilbert v. Gangar, U. S. Ct. Ill.,
Cent. L. J., vol. 7, p. 41; Walcott v. Heath, 78 Ill., 433;
Logan v. Brown, 81 Ill., 415; Hibblewhite v. McMorine, 5

Mees. & Wel., 462; Porter *v.* Viets, 1 Bissell (U. S. C. C.), 177.

The intent that a transaction should be a mere betting on the market, without any expectation of actual performance, must be mutual and constitute an integral part of the contract in order to render it invalid. The secret intention of one of the parties not to fulfill his contract, uncommunicated to the other, is not enough to make the transaction illegal, nor that it was contemplated by him thereby to adjust the difference resulting from the fluctuations in the market price in case of a rise or fall, by making good, in money, by way of compensation, a guaranty to save the other party harmless against loss, or in like manner to make good the premium on profit to accrue to the other in case of advance in prices, under such a contract as the one sued on is alleged to have been, the other party not agreeing, at the time of its formation, to such an interpretation of a contract requiring actual sale and resale of the property embraced in its terms. The giving of the ninth charge asked was essential, under the evidence before the jury, to a full statement of the law applicable to the plaintiff's case; the more so because the general charge gave very great prominence to the defense set up of a gambling contract, by the use of trenchant language, denouncing such contracts as standing beyond the pale of the law's protection, asserting that the usual habit of parties to them was to cloak them with disguises, and invoking the exercise, by the jury, in conjunction with the court, of their mutual powers to unmask all species of coverings used by parties to conceal their subterfuges. In the case of Powell *v.* Messer, 18 Tex., 405, the court commended the refusal of the district judge to give an instruction asked, which was abstractly correct law, where the law of the case had been properly given by the court, Chief Justice Wheeler remarking: "Where the judge has embodied in his charge rules of law applicable to the case, in such form and connection as to give to each no more than its due relative

prominence, to repeat portions of the charge in the form of distinct and independent propositions may, not unfrequently, have the effect to give to the principles thus enunciated an undue prominence and importance in the minds of the jury, and thus to mislead them in the application of the law to the evidence." The danger thus pointed out may exist as well in the charge given of the court's own motion as to be found in a supplement to it in the shape of a charge given at the request of one of the parties; and whilst, in this case, no undue importance may have been given to the subject-matter charged upon, yet the prominence given to the effect of the contract, if found to be a gambling one, rendered it essential to a fair trial that the entire law applicable to all the phases under which the evidence was fairly susceptible of being viewed be given. Such was not done in the general charge; a charge was asked and refused which supplied a proper and necessary qualification which was applicable to evidence in the case. We are not able to say, from a review of the record of the trial, that the plaintiff was not prejudiced by the error committed in refusing the charge, nor are we able to determine that the jury may not have been misled by that part of the judge's charge which stated that "such gambling contracts, when stripped of all the devices which parties usually resort to for the purpose of hiding the true nature of the contracts, simply are, that the parties bet that an article at a certain time will be worth so much, and they usually put up a sum to cover a margin." The sign and badge referred to, "putting up a sum to cover a margin," was an ingredient in the contract between these parties, if it comported with gambling contracts. It is not less true that such assurances are the every-day appliances of the trading world in conducting, more or less, all commercial transactions, according to varying circumstances. Having thus emphasized one of the parts of the contract by judicial cognizance, as indicative of, or at all events consistent with, illegality, it becomes now essential still that

the full statement of the law should be given on the same subject, as was attempted to be done by plaintiff's counsel.

The first assignment of errors is to the effect "that the court erred in charging the jury that the circular advertisement of defendant, announcing a new line of business, ad the employment of J. E. Villavassa as agent and manager, did not authorize said agent to make the contract sued on, in that plaintiff had introduced seven wholesale grocers of Galveston to prove the agency of Villavassa by showing that the business of Elsworth & Co., as brokers and commission merchants in western produce and bacon, was all done by and through said agent. Plaintiff then rested, and the defendant testified in his own behalf that the agency was special. On cross-examination the advertisement was shown to him, and put in evidence as explanatory and in rebuttal."

The second and third assignments of error were as follows, relating to the same subject, and all of them may be considered together; they are substantially as follows:

Second proposition. The court erred in charging that the written circular advertisement would not authorize Villavassa to make the contract sued on, in that the legal import of said circular is that it is only an advertisement of Elsworth & Co. of their having opened a new branch of business, and the management of Villavassa as manager thereof is not by way of a power of attorney to him, nor intended to be the evidence of his authority, but a statement to induce business by showing the competency of the manager. The charge of the court, on this circular, laid such stress on this circular that it was calculated to mislead the jury into thinking that the question whether Villavassa was defendant's authorized agent for the making of the contract sued on turned on the legal import of authority under said circular.

Third proposition. The court erred in charging the jury that the written circular advertisement would not authorize Villavassa to bind the defendant by the contract sued on,

in that this charge negatives the idea that the jury could look to this circular in connection with, and as part of, the other evidence of Villavassa's agency or authority to make the contract.

Fourth proposition. The court erred in charging the jury that the circular advertisement did not authorize the agent, Villavassa, to bind the defendant by the contract sued on, in this: The contract is alleged in petition to have been made by Elsworth through said agent as broker. The advertisement does not even state that Elsworth does a brokerage business, and has no further connection with the case than to show that Villavassa had full charge of certain lines of business to which the brokerage business of defendant is germain.

And in the same connection may be considered the tenth assignment of error, as follows:

Tenth proposition. The court erred in refusing to give the charge asked by plaintiff to the effect that if Elsworth authorized Villavassa to do business in such a way as to authorize the making of the contract sued on, or, if Elsworth justified Marx in believing that Villavassa was authorized to make such a contract, then, if the jury find that the contract was made by Villavassa as agent of Elsworth, it binds Elsworth.

Because the general charge does not instruct the jury as to responsibility, as between principal and third party, that springs from the principal so acting as to justify the third party in believing that the agent had requisite authority.

The most usual mode of appointment of agents is by an unwritten request, or by implication from the recognition of the principal, or from his acquiescence in the acts of the agent. Agencies of this class, as remarked by Judge Story (Story on Agency, § 55), " are very familiar in all the common business of life and the common departments of trade. . . . And the nature and extent of the authority of the servant or agent are often wholly deduced from the nature

and extent of his usual employment. . . . And it is a general rule that where one of two innocent persons must suffer by the misconduct of a third person, that party shall suffer who, by his own acts and conduct, has enabled such third person, by giving him credit, to practice a fraud or imposition upon the other party."

The elementary rule, however, on this subject is, of course, not questioned by the district judge, nor by counsel, that the p..ncipal should be held bound by the acts of the agent within the scope of his general authority; whatever questions arise grow out of the application of the maxims of law to facts. To ascertain not merely the actual authority conferred by express delegation of trust by the defendant, but to determine how far third persons might fairly imply the existence of authority deducible not only from the nature of the business or agency in which Villavassa was employed, but from transactions and dealings had with the business world by Villavassa in behalf of defendant, acquiesced in or approved by the latter, whereby he was thus held out to the public as competent to do such acts, were all proper subjects to submit by evidence to the jury. And it was only proper to have allowed the jury, under instructions, to determine, from all the evidence before them, as to what was the extent of Villavassa's authority to bind the defendant, either from the nature of his employment or from the acts and dealings of defendant through his agent, Villavassa, with the business or commercial world. The circular letter constituted one of such facts; and the evidence respecting dealings and transactions with others, acquiesced in, and the current business affairs of the defendant in certain lines of business, constituted other facts; and it was from all of these that the jury should have been allowed to draw the inference concerning the competency of Villavassa to bind the defendant by such a contract. It was not an incorrect proposition, as stated in the charge, "that the written circular in evidence would not authorize

Villavassa to make such a contract." And if the succeeding sentence did not, by implication, exclude from the jury the right to look to it, together with the other evidence, and had affirmatively authorized them to consider it in connection with the other evidence in determining the authority of Villavassa, then the charge could not have been successfully complained of; but they are instructed that the circular is insufficient, and that the authority to bind Elsworth must be determined by other evidence in the cause, without any indication that the circular was pertinent to the subject or might be weighed in connection with the other facts in evidence. The error committed in thus failing to give plaintiff the benefit of the evidence referred to, it cannot be supposed influenced prejudicially the result of the trial, as the facts contained in the circular letter were otherwise sufficiently before the jury.

The subject of the charge asked and refused, set out in the tenth assignment of errors, ought to have been submitted in some shape by the judge in view of all the evidence in the case, as the plaintiff asked an instruction on the subject. We are not prepared to approve of the charge in the shape in which it is presented. The court, we think, properly declined to give it. At the same time, the subject being called to the attention of the court, it should have been given with appropriate changes adapted to the statement of the legal propositions involved in the suggestions contained in the charge. The charge asked was too indefinite and too hypothetical as applied to the evidence.

The fifth, sixth and seventh assignments of error may be considered together. They are as follows:

Fifth proposition. There was no evidence to justify the charge on gambling contracts, and the prominence and length of such charge was calculated to mislead and confuse the jury, in that the lengthy exceptions and answer of defendant as to its being a gambling contract, and the argument of defendant's counsel, made it the duty of the court

to be specially careful to charge so as to rather free the jurors' minds from the necessity of considering this as the main question on the evidence.

Sixth proposition. The court erred in charging the jury as to gambling contracts, in that there was no evidence showing that the plaintiff, Marx, did not intend to buy actual bacon, or even that he had any reason to think that Elsworth & Co., acting as brokers, did not intend to deliver the bacon constructively to plaintiff by holding the same for resale on the day they contracted for delivery.

There was no evidence to show that any one ever gambled in bacon, by any such contract as is set out in the charge as constituting a gambling contract. There was no evidence that bacon is one of the articles of commerce, the market fluctuations of which are or can be the basis of gambling contracts. There is no witness that either plaintiff or defendant ever made a gambling contract as to any article.

Seventh proposition. The charge of the court was, as a whole, calculated to mislead the jury, in that, as a whole, the prominence given to gambling contracts and the effect of the circular advertisement was calculated to mislead the jury, and invades the province of the jury just as much as if there had been a direct charge for the defendant on the weight of the evidence, and especially so when the charge is put in the form of abstract propositions.

We have already sufficiently indicated our views on the seventh proposition. The defense of gambling contracts was in issue, and if the charge of the court had been sufficiently explicit in respect to matters hereinbefore adverted to, or had given the instructions asked, notwithstanding the prominence given to the subject of defense and the animadversions against that class of contracts, this court would not necessarily reverse the judgment, even though we might consider the charge subject to criticism, unless there was reason to conclude that the jury were unduly influenced thereby and the plaintiff injured thereby.

In respect to the fifth and sixth propositions, although there was both direct and also circumstantial evidence to establish the contract as alleged, still, in view of the nature of the transaction, it was competent for the defendant to submit the credibility of the statements of the plaintiff to the jury, and to require them to weigh all the evidence, at all events, for the purpose of denying that the contract was, in fact, made between plaintiff and Villavassa, by showing, if he could, that it was a contract in futures, and not for sale and resale of actual bacon. There was no incontestible evidence of an actual sale and delivery, or actual resale and delivery of the bacon. The report thereof made by Villavassa, according to the plaintiff's testimony, constitutes the principal and, perhaps, exclusive evidence on that subject. There is also the testimony of McRae, defendant's book-keeper, and also that of the plaintiff himself, on cross-examination, and the defendant's testimony, as to the silence of plaintiff concerning the transaction after Villavassa's departure; and the evidence of the correspondence by telegraph and by letter with Borman & Gainie presented a state of case which rendered it not improper for the court to submit a charge on the subject-matter of the defense set up by the defendant.

Eighth proposition. The court erred in refusing the charge asked by plaintiff, to the effect that subsequent ratification is equivalent to previous authority, and that if the principal retains money paid to agent by third party after he is advised of the terms of the contract on which it was paid, this would constitute ratification, even though the agent, when he paid the money to his principal, falsely represented that he had received it on another and different contract.

The evidence being that defendant's agent received $1,500 from plaintiff, Marx, on the contract sued on, and about the same time paid $1,000 to defendant without informing defendant of the real contract, but stating that the $1,000 was paid by the plaintiff on another and different

contract, which, in point of fact, is conclusively shown never to have been made, or if the broker had reasonable grounds for believing that the money previously received was paid on the contract sued on, then retention of it is ratification.

We do not think that the court erred in refusing to give this charge. The evidence did not warrant the assumption that the defendant was advised of the terms of the contract on which it was paid, the assignment itself admits, in the proposition that the defendant was otherwise advised in respect to the money and the account on which it was received. Such evidence would be too remote to base on it the existence of the fact of such knowledge as would, in its effect, operate as an estoppel *in pais*. The evidence of ratification, to bind a party, should be as clear as that required for an original authority. . . . It may be stated, as a general rule, says Judge Parsons, "that no act operates a ratification, unless, with a full knowledge of the circumstances, it was intended so to operate, or unless it was such an act as justifies third parties, who are interested in the question, in believing it was a ratification. And the ignorance of the principal, although it arose from his own negligence, will invalidate the ratification."

The last remaining proposition under the assignment of errors is the eleventh, as follows:

Eleventh proposition. The court erred in refusing the charge asked for plaintiff, to the effect that if Elsworth authorized the making of the contract, and it was made by him as a broker, there can be no question or defense in this suit on the ground that plaintiff did not expect the actual article to be delivered.

It is not clear to our minds that the evidence in the case warranted the application of the principle which it invoked by the instruction asked and refused. As the judgment will be reversed and the cause remanded for further proceedings, and in view of the fact that the principle of law involved is well settled, and the only differences which might occur in legal minds would arise from the construc-

tion of the facts, we deem it proper to indicate no absolute rule to govern the trial in the court below, but will content ourselves with intimating the opinion to which we are inclined, to the effect that the transaction, as relied on by the plaintiff, was not a contract with Villavassa as broker, nor as representing any other person as broker. The elementary principles of law applicable to the subject of brokers and brokerage contracts seem to contemplate the engagement of a mere negotiator for effecting sales between parties, or as middle-men for effecting contracts of various kinds. Without pursuing further the characterizing elements of such contracts and functions, it is sufficient to say that the inclination of our minds respecting the transaction under consideration is to hold it to be not a brokerage contract. It is not important that we should affirmatively define its special character further. A contract made by a broker, or by a factor who is also a broker, may, of course, be valid, and yet be distinct from, and disconnected with, the peculiar duties or relations pertaining to either vocation, and independent of the current business of such person. It may be a speculation entered into for mutual profit with a person or persons, and the transaction may still not have any essential relation to the factorage or brokerage business.

There is no assignment of error requiring us to remark upon the merits of the defense set up against contracts commonly designated as dealings in "futures;" the defense characterizes and assumes that such contracts under our laws are gambling contracts and void as against public policy. In passing upon the questions presented to us in the assignment of errors, we do not mean to be understood as expressing any opinion as to the alleged illegality of the class of contracts referred to.

We are of the opinion that the judgment of the district court ought to be reversed and shall award accordingly.