# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—AUGUST TERM, 1886.

## H. R. MILLER

v.

## BENSLEY & WAGNER, use, etc.

1. GAMBLING CONTRACTS.—Under the decisions of the Supreme Court section 130, chapter 38 of the statute relating to gambling contracts does not prohibit the purchase or sale of grain with an option given to the purchaser to deliver, or to the seller to receive, within a time limited in the future, but the option prohibited is "puts" or "calls."

2. PURCHASE OF CORN TO BE DELIVERED IN THE FUTURE.—The court is of opinion that the evidence in this case justified the jury in finding the purchase of corn, to be delivered within a limited time in the future, by appellees for appellant, was a real and not a pretended purchase, and that the contract was valid.

3. INTENTION OF PARTIES.—The offer of appellant to prove that he did not intend when he ordered the purchase of the grain, to receive and pay for it, but intended to settle the deal upon differences, was properly refused.

APPEAL from the Circuit Court of Fayette county; the Hon. JESSE J. PHILLIPS, Judge, presiding. Opinion filed November 24, 1886.

Messrs. ASHCRAFT & STILLMAN, for appellant; that the evidence does not sustain the verdict and judgment, cited Lyon v. Culbertson, 83 Ill. 38; Beveridge v. Hewitt, 8 Bradwell, 467; Kirkpatrick v. Bonsall, 72 Pa. St. 155; Walker v.

Rogers, 40 Ill. 278 ; Thackray v. Blackett, 3 Campbell, 164 ; Morgan v. Peet, 32 Ill. 288; Trimble v. Thorn, 16 Johns. 153.

The intention of the parties is material : Tenney v. Foote, 4 Bradwell, 594; 95 Ill. 99 ; Grizewood v. Bane, 11 C. B. 73, E. C. L. R. 538 ; Yerkes v. Solomon, 18 N. Y. Sup. Ct. 473 ; Gregory v. Wendell, 39 Mich. 337 ; Colderwood v. McCrea, 11 Bradwell, 543.

Messrs. FARMER & BROWN and Mr. JACOB FOUKE, for appellees ; that time contracts made in good faith for the future delivery of grain or other commodity are legal, cited Wolcott v. Health, 78 Ill. 433; Cole v. Milmine, 88 Ill. 349 ; Logan v. Musick, 81 Ill. 415 ; Tenney v. Foote, 4 Bradwell, 594.

GREEN, J.  This was an action of assumpsit against appellant, to recover for money paid and advanced and commissions. The trial below resulted in a verdict for plaintiffs, and defendant's motion for new trial having been overruled and judgment rendered on the verdict, this appeal was taken. It appears from the evidence that appellant, by letter dated August 27, 1882, ordered plaintiffs to buy for him, for delivery during the month of May, 1883, 5,000 bushels of corn, at a price not exceeding 62 cents per bushel, and plaintiffs acting on such order, on August 30, 1882, bought that amount of corn for appellant of McDermen, Russ & Co., on the Board of Trade in Chicago, at $61\frac{7}{8}$ cents per bushel, for such May delivery, and advised appellant by mail of their action; the price paid was the prevailing market price on August 30th; there was no option in the contract, except the sellers had the right to deliver the corn on any day during May, and were bound to deliver it to the buyers within that month, and the latter were bound to then receive and pay for it.  After notifying appellant of said purchase plaintiffs drew on him as he instructed them to do, for the margin required, and through the bank he had named, but the draft was returned dishonored, and on September 2, 1882, this fact was made known to appellant by letter from plaintiffs, in which they ask for remittance to protect them, or for instructions about closing out the deal ; not receiving any reply or remittance, and the price of corn de-

clining, to prevent further loss, (as Bensley testifies,) plaintiffs sold the corn purchased, on September 5, 1882, at a loss of $343.75, and so informed appellant by letter, at the same time sending him a statement of their account; no answer to this was made by appellant, and plaintiffs advanced the money for him, and paid this loss on December 8, 1882; this purchase of corn was for the actual delivery of it, and the commission of $12.50 charged appellant, was shown to have been reasonable. It is insisted for appellant, this transaction between the plaintiffs and himself is a gambling contract, and void under this clause of our statute, section 130, chapter 38: "Whoever contracts to have or give to himself or another, the option to sell or buy at a future time, any grain  *  *  *  he shall be fined *  *  *  and all contracts made in violation of this section shall be considered gambling contracts and shall be void." This clause has been frequently construed by our Supreme Court, and such construction upon the facts as shown in this case, is adverse to the theory of appellant. It was not intended or designed by that provision of the statute, to prohibit the purchase or sale of grain, with an option given to the purchaser to deliver, or to the seller to receive within a time limited in the future, but the option prohibited is defined in Pixley v. Boynton, 79 Ill. 351, to be "puts" or "calls;" a "put" is a privilege to deliver or not deliver grain or other commodity; a "call" is a privilege to call or decline to call for such delivery.

In Logan v. Musick, 81 Ill. 415, the court holds that contracts for future delivery are not prohibited, nor does it make any difference as to the legality of the contract, whether the party selling for future delivery has the grain on hand or not. In Pixley v. Brown, *supra*, the option, as in this case, was as to the time of delivery, and the contract was held to be legal.

In Corbett v. Underwood, 83 Ill. 323, a case like this in its facts, it is said, the transaction was not a deal in options, but the defendant purchased from third parties, corn to be delivered at a future day, and had margins been kept good by plaintiff, as required by the rules of the Board of Trade under which the contract was made, there is nothing to

Miller v. Bensley & Wagner.

justify the belief it would not have been delivered. See also Cole v. Milmine, 88 Ill. 349. The facts proven, justified the jury in finding the purchase of corn by plaintiffs for appellant, to have been a real and not a pretended purchase, and under the construction given the statute by the Supreme Court the contract was valid, although the right was reserved to deliver the corn within a limited time in the future. The refusal to give the 1st, 3d, 5th and 10th instructions asked for by defendant below, is also assigned for error, but the 1st, 3d, and 10th of these, are based upon the assumption that the contract of purchase made by plaintiffs was not real, was not intended by the parties to it to be a sale and purchase, but was a mere wager on the future state of the market; this assumption had no support from any evidence in the record, and the only attempt to give such a character to the contract, was the offer to prove by appellant that *he* did not intend, when he ordered the purchase of the grain, to receive and pay for it, but intended to settle the deal upon differences, which testimony the court very properly refused to admit; first, for the reason such intent of appellant only, even if known to plaintiffs, could not affect the contract made by them, and also because the order given by appellant for the purchase directly contradicted such intent, and having given such order he was bound by it. The 5th instruction refused is also obnoxious to the objection that no evidence supports it. We will not lengthen this opinion by commenting upon the authorities cited by counsel for appellant in support of their theory in this case, further than to say, those authorities are not in point upon the facts proven here. We think this case was fairly tried, the verdict of the jury was supported by the evidence, and the judgment ought not to be disturbed; it is therefore affirmed.

Judgment affirmed.

PILLSBURY, J., dissenting. Being unable to agree with my brethren that this judgment should be affirmed, I feel constrained to state some of the reasons that lead me to conclude that error was committed upon the trial of this cause. The

issues formed upon the plea filed in this case, presented the question whether the transaction between appellant and appellees was a gambling one. The defendant below offered to prove, in addition to what already appeared in the record, that he did not intend to receive and pay for the corn, but intended to settle the deal upon differences, and that the plaintiffs knew what his intentions were when they made the purchase for him. The court below refused such offered proof, and exception was duly taken. " Agreements for the future delivery of grain or any other commodity are not prohibited by the common law, nor by any statute of this State, nor by any policy adopted for the protection of the public. What the law does prohibit, and what is deemed detrimental to the general welfare, is speculating in differences in market values." Pickering v. Cease, 79 Ill. 329. Here we have a definition of a gambling transaction on the Chicago Board of Trade made by our own court of last resort, and from which it has never, to my knowledge, departed. In Tenney v. Foote, 4 Bradwell, 594, Judge McAllister wrote an opinion at the circuit, which was affirmed by the appellate court and fully indorsed by the Supreme Court, 95 Ill. 99, in which he says that "no matter what form the transaction bears as to the terms of the contract, still, if such form be colorable only, and the real intention of the parties be that there is to be no sale of the article, no delivery or acceptance of it, but the transaction to be adjusted only upon differences, it is a gambling transaction within the statute." The real intention of the parties then becomes a material question of fact, and any evidence offered tending to show what such intention was, should be submitted to the jury. It may be that under the decisions in this State we are to presume that every deal made on the Board of Trade is honest and legitimate within the law, casting upon the party questioning the validity of the transaction, the burden of proof to establish its illegality. This, however, is but a mere presumption, and in the light of common observation and experience regarding the custom of buying and selling upon the Board of Trade, as well as the testimony of one of the appellees in this record, that perhaps twenty per cent. of the deals made

Miller v. Bensley & Wagner.

there are settled by the delivery of the commodity, such presumption, in my opinion, becomes a very weak one, and it should require but slight evidence of the intention of the parties to settle upon differences to send the case to the jury to determine what their intentions were, in a given instance. When, therefore, the appellant offered to show that his intention when he gave the order to appellees, was not to receive the grain but to settle the deal upon differences in market value, and that appellees knew that such was his intent, I think error was committed by the court in excluding such offered proof. If they knew his proposition to them was made for pure speculation in differences in market values, it was their plain duty to accept the order in that view or reject it entirely, if their method of doing business did not allow them to aid the appellant in any illegal transaction.

Mr. Justice Breese says, in Wells v. Carpenter, 65 Ill. 447, that "the true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he in fact did so understand and accept it." The same principle should be applied here especially as the parties can not escape the effect of the statute by any form of the contract, if in fact it was designed as a cover for a gambling deal. Again, I think there was sufficient evidence in the record to submit the question to the jury whether the transaction was not obnoxious to the statute. It seems that appellees received three communications from the appellant, the first being as follows:

VANDALIA, ILL., Aug. 15, 1882.
BENSLEY & WAGNER, Chicago, Ill.

Yours of late date in reply to postal to hand. Yes, I have some information relative to terms, etc. Have bought grain both in Chicago and St. Louis; was unfortunate enough to be on the bull side last fall. I will know nothing of to-day's market until to-morrow morning, at which time will receive Chicago price current. In case I decide to make a purchase or sale on receiving prices in the morning will wire you, and if you execute order, make draft on me through Farmers and Merchants National Bank, for 3c margin on corn or oats, or

Miller v. Bensley & Wagner.

5c on wheat. I may not send order; may wait to hear again from you. Don't want any draft on the firm—only myself. What do you think of May corn? I believe it opened at 72, and yesterday was 66¼. I believe it is a good buy at 65c. Possibly a man might have to re-margin; I think it is an option a man can make money on to either buy or sell. What is your opinion on oats? Do you think September oats a good buy at 36?        Yours,        H. R. MILLER.

On August 19th they received the following:

VANDALIA, ILL., Aug. 18, 1882.

BENSLEY & WAGNER, Chicago, Illinois.

Should May corn continue to drop and reach 60c, buy me 5,000 and make your draft for margins. This looks pretty low for the article, but there is a possibility of its reaching the figure.        Yours truly,        H. R. MILLER.

August 29th they received a letter requesting them to purchase 5,000 bushels of corn for May delivery at 61½ or 62 cents per bushel. This letter is claimed to have been lost and was not introduced upon the trial. The appellees introduced these letters as a basis for their actions in purchasing the corn for the appellant, and in my opinion thereby sufficiently showed the illegality of the transaction, to authorize the court to send the case to the jury upon that issue. The object and purpose of the appellant in trading upon the board is very manifest; from his letter of August 15th to the appellees, it is seen that he had dealt both in St. Louis and Chicago, but the fall before was so unfortunate as to be on the bull side of the market. He is not sure whether he wants to *buy* or *sell* corn, but on receiving prices will wire them but may not send any order. May wait and hear from them again; wants to know what they think of May corn; believes himself that it would be a good buy at 65 but might have to re-margin; thinks it is an *option* a man can make money on either to *buy* or *sell;* asks their opinion of oats and whether oats at 36 would be a *good buy.* How the appellees could understand from this letter that the appellant intended to become an honest trader on the Board of Trade, is beyond my comprehension. When

Miller v. Bensley & Wagner.

he does not know whether he wanted to *buy* or *sell*, but is willing to take an *option* either way to make some money, it seems to me it is clear that he intended to enter into a bare-faced speculation in differences.    There is no element of an intended honest transaction in it.    There is no intimation that he is in need of 5,000 bushels of corn if he *buys*, nor that he has that amount to deliver if he *sells;* but the May *option* to receive or deliver is his object and which one he will take must depend upon the state of the market.    There is nothing in the other letters that show any change of intention upon his part, but having ascertained which side of the market he desires to take, he gives his order to *buy* and again finds himself upon the wrong side.    I have no sympathy for the appellee whatever, as his design was to make money without returning any equivalent for it.    His gain would be a clear loss to some other speculator in differences and neither the loser nor the winner is entitled to any very tender considera-tion at the hands of a court of justice.    The statute was enacted for a wise and beneficent purpose, and a fair, liberal construction and a prompt and earnest enforcement of it by the courts will greatly promote the public welfare, and lessen the evil it was designed to eradicate.    The court below, in giving the instruction for the plaintiff and refusing the first and third of those asked by the defendant, substantially took from the jury the question whether the deal was a gambling transaction, and in so doing I think error was committed as the evidence was sufficient to submit that question to them.

In my opinion the judgment should be reversed.