HENRY M. TENNEY *et al.*

*v.*

IRA FOOTE.

*Filed at Ottawa May 18, 1880.*

1. APPEAL *from an Appellate court—as to the finding of facts.* An assignment of error as to the judgment of the Appellate Court, relating purely to a question of fact arising upon the issues in the trial court, is not allowable, except in a criminal case, or one in which the revenue, a franchise or freehold, or the validity of a statute, is involved.[*]

2. Where the Appellate Court finds that the evidence sustains the verdict of the jury, such finding, as to the facts, is conclusive upon this court, and only questions of law can be considered. The rule is the same as to the

[*] Or in cases in chancery. *Gravett v. Davis*, 92 Ill. 190; *Fanning v. Russell*, 94 Ill. 386.

finding of the circuit court trying a case without a jury. It will be presumed, when the judgment is affirmed, that the Appellate Court did its duty, and determined whether the evidence warranted the finding of the court.

3. Where the issues presented by pleas present no question of law, and no such question arises by the admission or exclusion of evidence on the trial, and the Appellate Court affirms the judgment below, its decision is final, and no error can be predicated upon its decision.

4. SAME—*certificate of finding of facts by Appellate Court—when allowable.* The statute authorizing the Appellate Court to find the facts in a case, applies only where the judgment of that court is the result wholly or in part of the finding of the facts, concerning the matter in controversy, *different from the finding of the court from which such cause was brought by appeal or writ of error,* and the facts found there must be recited in the *final order, judgment or decree of the court,* and not merely embraced in a certificate of two of the judges thereof.

5. SAME—*sufficiency of finding.* But in a case where the judgment of the trial court is affirmed by the Appellate Court, and the finding, even if proper in such case, finds as to a fact where it shows that the judges are unable to find that there was such a preponderance of the evidence the other way as to authorize the reversal of the judgment on that account, it will be sufficient to sustain the judgment of the circuit court, the presumption being that the evidence sustained the judgment.

6. PARTNERSHIP—*firm bound by frauds or illegal act of partner.* Where a partner, in the course of partnership business, commits a fraud, or does acts prohibited by law, the firm is liable, although the other partners have no knowledge of such fraud or illegal act.

7. So, where a partnership was formed between A and B, for engaging in the commission business, A to furnish the capital, and B generally did all the trading of the firm, and B made a contract with another in the course of the firm business, and in its name, for trading for a commission on the board of trade, which was illegal, as relating to option or gaming contracts, all the dealings predicated upon such contract will be under legal condemnation, and a note given in consideration of a balance due under such contract to the firm, will be void as against the firm, or an assignee with notice, although B, the other partner, had no knowledge of the illegality of the contract.

8. CONTRACT—*illegal consideration in part.* Where a part of an entire consideration of a contract or promise is illegal, the whole contract is void.

APPEAL from the Appellate Court for the First District.

This was assumpsit by appellants, against appellee, upon a guaranty of a promissory note, as follows:

"$5000.  On the first day of January, A. D. 1877, the estate of Ira Couch, deceased, promise to pay to the order of Ira Foote, at their office, in Chicago, Illinois, five thousand dollars, with interest at eight per cent per annum, for value received.

"Dated, Chicago, July 1st, 1876.

> "William H. Wood,
> "Caroline E. Couch,
> "James Couch,
> "Trustees of the Estate of Ira Couch, deceased."

(Endorsed.)  "I hereby guarantee payment of the within note, at maturity, for value received, at maturity.

> Ira Foote,
> "By J. H. Rice, Attorney in fact."

The declaration contained a special count upon this guaranty.  Thereupon, the pleadings were:

*First.*  General issue.

*Second.*  That the promises in the declaration mentioned were upon the consideration of money won by Stephen G. Hooker and George D. Lincoln, under the firm name and style of S. G. Hooker & Co., from the defendant, by gaming, to-wit: by buying and selling for defendant on the board of trade deals and options in grain, wheat, lard and pork—which options and deals were to be settled upon differences alone— wherefore, by force of the statute, etc., the said promises were void.

*Third.*  That the consideration of the promises was money won by Hooker and Lincoln from the defendant, by gaming, to-wit: dealing in options for grain, and other commodities, on the board of trade, upon differences alone, wherein neither party had or was to deliver or receive any such article, bought or sold, of which the plaintiff had notice, wherefore, by force of the statute, the promises were void.

Affidavit of merits by defendant.

Replication to second and third pleas, that the considera-

tion of the promises was not money won by gaming, in the manner and form as alleged in the pleas.

Replication to second plea, that the promises were not made on consideration of money won by Hooker and Lincoln, by gaming, by buying and selling, for defendant, on the board of trade, deals and options in grain, which were to be settled on differences alone.

Replication to third plea, that the promises were not on or for commissions won by gaming, by dealing in options for grain, etc., for defendant, on the board of trade, whereby neither party was to deliver said grain, as in said plea alleged.

Issues were properly joined upon the several replications. A jury was waived, by agreement of the parties, and the cause was tried by the court. The court found the issues for appellee. Motion was made by appellants to set aside the finding, and for a new trial. This motion was overruled, and the court gave judgment in favor of appellee. To this proper exception was taken, and appellants took the case, by appeal, to the Appellate Court for the First District, where the judgment of the circuit court was, on hearing, affirmed. The present appeal is from that judgment.

The Appellate Court found the following facts, specially:

"We hereby certify that upon the hearing of this cause the said Appellate Court found the following facts:

"That from the fall of 1874 to the summer of 1876, Stephen G. Hooker and George D. Lincoln, composing the firm of S. G. Hooker & Co., were commission merchants of Chicago, and members of the board of trade of said city, and as such engaged in a general commission business; that Lincoln put in all the capital of the firm, and Hooker generally directed the trading on the board of trade.

"That Foote was a mechanic, and apparently rather ignorant and inexperienced in matters outside of his own proper business.

"Some time prior to the dealings out of which this suit has grown, Foote employed one Adams, a commission merchant,

to buy a quantity of oats for him. The oats were received and carried for some time, and as a result of the deal Foote experienced a considerable loss. For the purpose of obtaining assistance in the adjustment of his accounts with Adams growing out of said transaction, Foote had recourse to said Hooker, who was at this time a personal friend of his. Hooker thereupon began to solicit Foote, if he wanted to deal any more to employ him, saying that he could make some money for him. Foote replied that he wanted no such deal as the one he had had with Adams; that he didn't want any grain, and wouldn't handle any grain, and that he had no money to put up, but that if Hooker would deal for him in options and settle upon differences he thought he would employ him. Hooker assured him that he could, and an agreement was thereupon concluded, that Hooker should go on the board of trade, but with a distinct understanding that it should be only in options, and that no produce should be delivered or received on his account, but the transactions should be settled upon differences.

"That upon the question as to whether the terms of this contract were communicated to Lincoln the testimony is conflicting, and we find no such preponderance of the evidence in favor of the proposition that they were not communicated to said Lincoln as will warrant us in reversing the finding of the court below to the contrary.

"That from the fall of 1874 (the time when said agreement between said Foote and said Hooker was made), down to June, 1876, the firm of S. G. Hooker & Co. dealt for Foote upon the board of trade; that said dealings were in form purchases and sales of grain for future delivery; that said contracts for purchases and sales of grain were, as is the usual method of dealing upon the board of trade, made in the name of said S. G. Hooker & Co., with other members of said board; that said contracts were in form purchases and sales of property for future delivery; that said deals were from time to time communicated by said S. G. Hooker & Co. to

said Foote as the same were made. That all of said contracts, with one exception, were settled by the parties thereto before the time of delivery therein provided for, by receipt and payment of differences in price; that on one of said contracts a quantity of corn was received by said S. G. Hooker & Co.

"That in the earlier dealings of said Hooker & Co. for said Foote, profits were realized, which were paid over to Foote by said Hooker & Co. to the amount of several thousand dollars; that afterwards said dealings resulted in losses, and some time in 1874 or 1875 Foote gave to Hooker & Co. his note for $15,000.

"In June, 1876, the indebtedness from Foote to said S. G. Hooker & Co., arising out of said losses, including said $15,000 note, amounted to about $22,000, all of which had accrued for the payment of losses by said Hooker & Co. for Foote in the course of said dealings, and for commissions on said purchases and sales, and for storage.

"In April, 1876, when the balance against said Foote was about $19,000, said Hooker & Co. presented to him an itemized statement of the account, to which said Foote made no objection, except to one-half of the commissions charged, which half commissions were thereupon deducted from said account by said S. G. Hooker & Co.

"In June, 1876, Foote, acting through one Rice, his agent, settled with said S. G. Hooker & Co. for the amount of said account, after said deduction of commissions, by paying about $2000 in cash, and by endorsing and guaranteeing to Hooker & Co. four notes of the estate of Ira Couch, each for $5000.

"One of the notes thus endorsed and guaranteed was transferred before maturity by said S. G. Hooker & Co. to the plaintiffs, and it is this note upon which this suit is brought.

               "J. M. BAILEY,
               "ISAAC G. WILSON,
                     "*Judges.*"

Messrs. McCoy & Pratt, for the appellants.

Mr. Charles H. Reed, and Mr. Emery A. Storrs, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

The only errors assigned on this record are:

"*First.* Because the said court erred in affirming the judgment of the circuit court of Cook county in finding the issues for the defendant below.

"*Second.* Because the court erred in not finding whether there was or was not a preponderance of evidence showing that Lincoln had notice before and at the time the dealings for Foote were carried on upon the board of trade, of the original contract made between said Hooker and Foote.

"*Third.* Because the court erred in assuming, when passing upon the evidence concerning notice to Lincoln of the original contract made by Hooker and Foote, that the burden of proof rested upon the appellants to show that there was no such notice, and that the burden of proof was not upon Foote to prove said notice."

1st. Since this is neither a criminal case nor one in which the revenue, a franchise or freehold, or the validity of a statute is involved, the first assignment of error is not allowable. It relates, as will be observed, purely to the question of fact arising upon the issues. No question of law is thereby presented. The language of sec. 90 of the act to amend an act entitled "An act in regard to practice in courts of record," etc., approved June 2, 1877, leaves no room for controversy in this regard. It is: "The Supreme Court shall re-examine cases brought to it by appeal or writ of error as to questions of law only, and no assignment of error shall be allowed which shall call in question the determination of the inferior or appellate courts upon controverted questions of fact in any case, excepting those

enumerated in the preceding section,"—that is to say, excepting in cases involving the revenue, (as the statute is now amended), and cases involving a franchise, a freehold or the validity of a statute. Laws of 1877, p. 153. Also Laws of 1879, p. 222, sec. 88.

So we have held, when the Appellate Court finds that the evidence sustains the verdict of the jury, such finding as to the facts is conclusive upon this court, and only questions of law can be considered. *The City of Aurora* v. *Pennington,* 92 Ill. 564. And where the issues of fact were referred to the court without the intervention of a jury, as in the present case, and the Appellate Court affirmed the judgment of the circuit court, we held it was the right and duty of the Appellate Court to determine whether the evidence warranted the conclusion reached by the circuit court upon the question of fact upon which the case turned, and that we must conclusively presume that the Appellate Court did its duty in that regard, and that the conclusion reached by it is the correct one. *Carr* v. *Miner,* 92 Ill. 604. See, also, to same effect, *Hayward* v. *Merrill,* 94 Ill. 349, and *Hewitt* v. *The Board of Education, etc.,* id. 528.

2d. There seem to be two satisfactory answers to the second error assigned. First, the issues made by the pleadings present no question of law in this regard, and no question of law arose by reason of the admission or exclusion of evidence during the trial upon which this question can be predicated. The second plea presented the defence that " the promises in the declaration mentioned were upon the consideration of money won by Stephen G. Hooker and George D. Lincoln, under the firm name and style of S. G. Hooker & Co., from the defendant, by gaming, to-wit: by buying and selling for defendant on the board of trade deals and options in grain, wheat, lard and pork, which options and deals were to be settled upon differences alone." And the third plea presented the same defence substantially, but worded thus: " That the consideration of the promises was money won by Hooker and

Lincoln from the defendant by gaming, to-wit: dealing in options for grain and other commodities, on the board of trade, upon differences alone, wherein neither party had nor was to deliver or receive any such article bought or sold, of which plaintiff had notice."

Both pleas assume that the money was won, etc., by Lincoln and Hooker, and no question is made but that the act charged is the act of both. Whether, in fact, this was so, depended upon the proof. The finding of the circuit court was, that the defence was sustained by the proof, and the Appellate Court affirms this finding of fact.

The certificate purporting to be the findings of the Appellate Court, signed by two judges of that court, can not be regarded. No statute requires or authorizes such a certificate in cases like the present, and we can therefore base no judicial action upon it.

By section 87 of the amendment of the Practice act, adopted June 2, 1877, before quoted from, (Laws of 1877, p. 153,) it is provided: "If any final determination of any cause, as specified in the preceding sections, shall be made by the Appellate Court, as the result wholly or in part of the finding of the facts concerning the matter in controversy, different from the finding of the court from which such cause was brought by appeal or writ of error, it shall be the duty of such Appellate Court to recite in its final order, judgment or decree the facts as found; and the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy in such cause." This, it will be observed, applies only to cases where the judgment of the Appellate Court is the result, wholly or in part, of the finding of the facts concerning the matter in controversy, *different from the finding of the court from which such cause was brought by appeal or writ of error,*—and the facts found then, must be *recited in the final order, judgment or decree of the court,* and not merely embodied in a certificate of two judges thereof.

2d.   But assuming that we are bound to act upon the facts certified as the only facts to uphold the judgment,—in the first place, it may be said the finding of the court on the question of notice to Lincoln is sufficient.   What evidence was before the circuit court on that point, we can not know, except from this certificate.   It assumes there was sufficient to authorize that court to find as it did—that is to say, it shows the judges are unable to find there was such a preponderance that Lincoln did not have sufficient notice as would warrant the court in reversing the judgment on that account.   The judgment is presumed to be sustained by the evidence until the contrary is made to appear, and the contrary is not here made to appear.

In the second place, accept the finding, as we must for this question, to be true that Hooker generally directed the trading on the board of trade, and that all the trading for appellee was done by the firm of S. G. Hooker & Co., and the inference is conclusive that the contract made by Hooker with appellee was in the course of the partnership business—that is, it was in the general line of the firm business of trading for a commission on the board of trade.   No legitimate partnership contemplates, as a part of its business, the commission of frauds or of acts prohibited by law; yet, when a partner, in the course of the partnership business, commits a fraud or does acts prohibited by law, the firm is liable, although the other partners have no knowledge of such frauds or illegal acts.   *Wolf et al.* v. *Mills,* 56 Ill. 360; *Loomis et al.* v. *Barker,* 69 id. 360; *Schwabacker et al.* v. *Riddle,* 84 id. 517; *Durant* v. *Rogers,* 87 id. 508; *Castle et al.* v. *Bullard,* 23 Howard (U. S.) 172.

So, here, in our opinion, the inquiry whether Lincoln had notice of the agreement between Hooker and Foote is totally immaterial.   It was a partnership undertaking, and is the foundation of all the subsequent dealings between Foote on the one side and S. G. Hooker & Co. on the other.   If it was

forbidden by the letter or the policy of the law, necessarily all dealings predicated upon it are within legal condemnation.

3d.   What has been said in regard to the second error, necessarily disposes of the third error assigned.

Assuming that we are right in our preceding positions, it is not a pertinent inquiry where the burden of proof rested in regard to notice to Lincoln of the terms of the contract made by Hooker with Foote.

We may add, in conclusion, we see no objection to the law as announced in the opinion adopted by the Appellate Court, and written by the circuit judge, who was formerly a distinguished member of this court.   *Tenney* v. *Foote,* 4 Bradwell, 594.   Like doctrine, on the principal question, will be found in *Pickering et al.* v. *Cease,* 79 Ill. 328.

We held in *Henderson* v. *Palmer,* 71 Ill. 582, where part of an entire consideration for a promise is illegal, the whole contract is void.

The judgment is affirmed.

*Judgment affirmed.*