Anna Liska, Appellant, v. Hugo L. Pitte, Appellee.

Gen. No. 26,320.

1. PARTNERSHIP—*when silent partner not liable for conversion by member of firm.* Where the active partner in a real estate firm converted to his own use a note and trust deed left with the firm, without the consent or knowledge of the silent partner, and the evidence failed to disclose that the unlawful act was participated in in any way by the silent partner or that he profited thereby in any way or that the proceeds became a part of the partnership assets, the court properly directed a verdict for defendant, in an action of trover against the silent partner for conversion of the note and trust deed.

2. PARTNERSHIP—*conversion by partner as an act not in usual course of business*. Where the active partner in a real estate firm converted to his own use a note and trust deed left with the firm, such wrongful act was not performed in the usual course of the firm's business.

Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed June 13, 1921.

JONES & KERNER, for appellant; JAMES G. SKINNER, of counsel.

SABATH, STAFFORD & SABATH, for appellee; CHARLES B. STAFFORD and THOMAS M. ZASADIL, JR., of counsel.

MR. JUSTICE DEVER delivered the opinion of the court.

The plaintiff, Anna Liska, seeks by this appeal to reverse a judgment entered in an action of trover by the circuit court of Cook county in favor of the defendant, Hugo L. Pitte.

May 27, 1911, a deal for the sale of certain real estate owned by plaintiff and her husband was consummated at the real estate office of Robert L. Pitte & Son. Present at the time were Robert L. Pitte, Josef Liska, plaintiff's husband, and defendant, Hugo L. Pitte. The purchasers of the real estate gave in part payment therefor a promissory note for $6,000 and also a trust deed upon the premises securing the payment of the note with interest.

The evidence introduced on the trial tends to show that Josef Liska, at the request of Robert L. Pitte, left the note and trust deed in his, Pitte's, possession. Josef Liska at different times collected interest which became due on the note at the office of Robert L. Pitte & Son, and at certain times, at the direction of Robert L. Pitte, the father of defendant, defendant would get the papers from a safe and place them on a desk. February 5, 1917, Josef Liska executed and

delivered to his wife an assignment of the note and trust deed.

The evidence further shows that the defendant, Hugo L. Pitte, took no active part in the actual direction and conduct of the business conducted by his father. He did at times aid his father in the work performed in the office, but the evidence does not show that defendant at any time assumed to direct or to control this business. Robert L. Pitte for some years collected the interest due on the note and turned it over to the owner thereof.

By a petition in bankruptcy filed on January 25, 1917, on behalf of Robert L. Pitte & Son, and Robert L. Pitte and Hugo L. Pitte as individuals, the petitioners were declared bankrupts and as a consequence plaintiff made demand upon defendant for the note and trust deed. Plaintiff thereupon was requested by defendant to call about a week later and he would give them to her. The plaintiff called as directed but was unable to procure the note and trust deed. At the time the trust deed and note were deposited with Robert L. Pitte & Son a receipt was executed and delivered therefor. This receipt is as follows:

"Chicago, Ill. May 27th, 1911.

"Received of Josef Liska, Trust Deed, Principal Note and ten interest notes executed by Rosie Savage and Harry Savage, her husband, said Trust Deed being in the sum of $6,000.00 interest payable on the tenth day of October and of April during said term. The said papers to be held by us for safekeeping and to be returned to said Josef Liska at any time on presentation of this receipt.

Robert L. Pitte & Son
By Hugo L. Pitte
Robert L. Pitte."

The defendant testified that he had no interest in the business conducted by his father, although he did state that he was a silent partner therein; that he had nothing to do with the transactions of the firm

at all; that his name was used as part of the firm name in connection with the business, but that he took no part personally in its management; that at the time he signed the receipt in the year 1911 for the note and trust deed he did so under direction of some person whom he was unable to remember while on the stand; that he did not know what the paper was when he signed it; that his signature was attached thereto in accordance with his custom of signing receipts when requested to do so by his father.

The testimony of the defendant is to the effect that at the time the demand was made upon him for the note and trust deed, and after the filing of the petition in bankruptcy, he had stated to plaintiff that he did not know whether the papers she sought had been given to the Central Trust Company, which had been appointed receiver in the bankruptcy proceedings; that he had never sold or disposed of the trust deed or note; that he did not have them in his possession when she made demand upon him, and that he had never converted them to his own use in any way.

At the close of all the evidence the jury entered a verdict in favor of the defendant, as directed by the trial judge, and judgment was entered upon this verdict. It may be assumed for the purpose of this opinion that the evidence in the record tends to show that the defendant Hugo L. Pitte, was at least a silent partner in the business conducted by his father, Robert L. Pitte. It does not follow, however, from this fact that the defendant may be held liable for all of the acts and dealings of his father in connection with that business. Robert L. Pitte died February 23, 1917. Prior to the bankruptcy proceedings he converted the note and trust deed belonging to the plaintiff to his own use and he did so without the consent or acknowledge of the defendant. The evidence does not disclose that this unlawful act on the part of Robert L. Pitte was participated in in any way by

the defendant, or that the proceeds derived therefrom, if there were such, became a part of the partnership property or assets, or that defendant profited thereby in any manner or to any extent.

There is no evidence in the record tending to show the untruth of defendant's contention that his connection with the business conducted by his father was merely nominal; that he had "no real connection with the firm." While there was some attempt made during the course of the trial to show by cross-examination of the defendant and by other evidence that he had a substantial interest in the business, we are unable to hold that the conclusion of the trial judge, who had an opportunity to see and hear the witness, that the defendant had no real connection with the business conducted by his father and that he had not participated in or profited by his father's act, was erroneous.

It is insisted first that the tort was committed in the ordinary course of the firm's business. It should be borne in mind that in the present action the plaintiff seeks to hold the defendant liable in an action of tort; that is, she seeks to charge him with direct responsibility for the unlawful and unauthorized conduct of his father.

We do not think that it can be said that the act of converting this property was an act performed in the usual course of the firm's business. The business conducted by the firm of course gave the wrongdoer his opportunity. But it would be going rather far to hold that because of this circumstance the wrongful and criminal conduct of Robert L. Pitte was committed in the usual course of the firm's business. It may be conceded that a wrongful act of a partner committed within the scope of the business of the partnership, and which was authorized impliedly or expressly by the partners, and which also was performed for the benefit of the firm, will be presumed to

be concurred in by all of the partners and each may be held liable therefor. As we view the record in this case, however, we are unable to hold that the defendant either profited by the wrongful act or that he knew of or in any way had become a party thereto.

The case of *Durant v. Rogers* was twice before the Supreme Court of this State. In the first opinion, 71 Ill. 121, the Supreme Court held that one member of a firm is not liable for the trespass or wrongful act committed by another without his knowledge or assent; that this was especially so where the proof failed to show that a defendant partner had ratified the act by participating in the proceeds or otherwise, and, further, that a promise to pay the debt of another, after the same is incurred, is void unless made upon consideration and reduced to writing. There is no claim made here that the defendant had promised in writing or orally to pay plaintiff for her loss. Plaintiff does assert that a short time after the beginning of the bankruptcy proceedings the defendant had stated that her papers were in a vault and that he would procure them for her within a week. This statement is directly contradicted by defendant, but assuming for the moment that defendant did make the statement, he would not become thereby legally liable to plaintiff. In the *Durant* case the action was in assumpsit. In the present case it is sought to charge the defendant as for a tort, which the evidence shows was committed by another without defendant's consent or knowledge.

In the second opinion in the *Durant* case, 87 Ill. 508, it was held that a fraudulent act by one partner, or deceit practiced by him, done within the scope of a general partnership authority, will make the other partner liable. This expression of opinion by the Supreme Court was occasioned by the fact that the record then before the court showed that cattle and other property which had been wrongfully taken by

a partner were added to the assets of the firm and that thereby the partner sought to be charged had profited by the wrongful act. The record in the earlier case showed no such fact. The wrongful act complained of in the *Durant* case was an act committed, although illegally, in an attempt to increase the assets of the partnership, and the Supreme Court said in 87 Ill. 511, that "it cannot be denied that it was within the scope and business of this copartnership to save and protect the property of the partners, and their acts to that end would bind the partnership." No such facts appear in the instant case. The wrongful act complained of was not committed with a purpose to protect or to add to the partnership property. It was clearly an unauthorized taking of property for the sole benefit of the wrongdoer.

In the case of *Bane v. Detrick*, 52 Ill. 19, it was held that partners may be sued in an action of trover although there was no joint conversion in fact; that such conversion would be implied in law by the consent of a partner to the acts committed by his copartners; and to the same effect are the cases of *Loomis v. Barker*, 69 Ill. 361, and *Kerr v. Sharp*, 83 Ill. 199.

For the plaintiff it is urged that where it appears that the tort was committed in the ordinary course of a partnership business, a nonparticipating partner who had no knowledge of the tort will be held liable in an action of trover, even though it appears by the record that such nonparticipating partner had derived no benefit from the tortious act and had not consented to or approved the tort.

In the case of *Tenney v. Foote*, 95 Ill. 99, the court said:

"No legitimate partnership contemplates, as a part of its business, the commission of frauds or of acts prohibited by law; yet, when a partner, in the course of the partnership business, commits a fraud

or does acts prohibited by law, the firm is liable, although the other partners have no knowledge of such frauds or illegal acts.''

An examination of this latter case, however, discloses that the wrongful act complained of was committed by a partner who did all the trading for the firm and he had entered into a contract on behalf of the firm, which the court held was ''in the general line of the firm's business of trading for a commission on the board of trade.'' It was held by the Supreme Court that the making of this contract, though illegal and fraudulent, was an act done in the course of the firm's business, and the general statement above quoted should be interpreted in view of these facts. The wrongful act complained of in the present case was a definite stealing of the property which belonged to the plaintiff and a conversion of the same to the wrongdoer's own use.

The judgment of the circuit court will be affirmed.

*Affirmed.*

HOLDOM, P. J., and McSURELY, J., concur.