# BROWN, GRAVES & CO.

## v.

# JAMES P. ALEXANDER.

*Gaming Contracts—Board of Trade— Options—Action on Notes—Illegal Consideration—Pleading.*

1. In an action on promissory notes, a plea to the effect that they were given for money due on gaming contracts connected with certain dealings in options, presents a good defense without regard to where the notes were made or were payable.

2. In the case presented, as it does not appear that there was to be any delivery of grain under the contracts in question, and as it is clear that settlements were to be made on the basis of differences in values, this court holds that the transactions between the parties were of an illegal character, and declines to interfere with the judgment for the defendant.

[Opinion filed March 1, 1889.]

APPEAL from the Circuit Court of St. Clair County; the Hon. GEORGE W. WALL, Judge, presiding.

Messrs. KOERNER & HORNER and FRANCIS A. RIDDLE, for appellant.

The testimony of Mr. Graves sustains the validity of the consideration of these notes and the course of dealing between the parties in every essential particular. He shows that the only "option" that existed in any of the contracts made by the plaintiffs for the defendant related to a right reserved or held by the seller, under which he might select, at his pleasure, any business day of the month for which the grain was sold, on which to deliver the grain, and make good his contract.

That such an "option," relating merely to the time of delivery, is entirely legal, is undisputed. Logan v. Musick, 81 Ill. 416; Harris v. Turnbridge, 83 N. Y. 99.

"Options to buy or sell at a future day" are illegal; but contracts wherein the only option is the time when, during the month, the delivery shall be made, are valid. White v. Barber, 123 U. S. 392.

Whatever Alexander's purposes were, they were unknown to plaintiffs. His secret intentions can not give color to their conduct, or impugn the validity of their contracts. He ordered them to buy grain and they executed the order and reported the fact. Was it their business then to inquire what purpose he had for the grain? Or whether he intended to sell it again, and, if so, when? The theory of the defense would seem to so indicate. But the bare statement of such a proposition shows its absurdity.

The case of Bangs v. Hornick, 30 Fed. Rep. 98, is so nearly in line with the case at bar, and so aptly illustrates the principle under consideration as to justify a liberal extract. The action was upon a promissory note given by the defendant to his brokers for losses incurred in stock speculation, and the defendant pleaded that it was void because given for a gambling debt. The facts were that the defendant, whenever he wished to buy or sell, gave orders accordingly to his brokers, depositing with them a sum varying from three to ten per cent. as margin. If by the transaction a profit was made his account was credited with it; if a loss resulted he was debited with it; " he never received any certificates of stock, never saw any, and did not, of his own knowledge, know whether any were ever bought or sold."

The court said:

"Now, it is doubtless true that where there is in fact no purchase and sale of stocks and none intended by both parties, but simply a wager intended on the rise and fall of prices, the transaction is a gambling one and can not be upheld. But it is equally true and well settled that where the gambling intent exists only on one side, and the other party intends an actual purchase or sale, then the transaction is valid. There is no gambling unless both sides gamble; and from the intent or belief of the one party it is not fair to presume a like intent or belief on the other. Bartlett v. Smith, 13 Fed. Rep. 263; Kirkpatrick v. Adams, 20 Fed. Rep. 287; Irwin v. Williar, 110 U. S. 507. * * * Counsel for defendant say that it is the absolute duty of the court to denounce this transaction, unless it clearly appears that it was a valid and honest

one. I think the duty of the court is precisely the reverse, and that it is the duty of the court to uphold it unless it clearly appears that it was an invalid and dishonest one. The defendant has given his note. The law presumes there was a consideration and an honest one, and unless he has shown to the contrary he should abide by the contract he has made." Bangs v. Hornick, 30 Fed. Rep. 98.

"It is very easy for either party to swear what his own understanding of the contract was, but that, standing alone, is manifestly immaterial. The secret intentions of one party uncommunicated to the other party can not prevail to make a contract illegal which is otherwise valid." Clarke v. Foss, 7 Biss. 548; Ward v. Vosburg, 31 Fed. Rep. 12.

"The intention of the parties gives character to the transaction, and if either party contracted in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose of the other party." Pixley v. Boynton, 79 Ill. 351; Rumsey v. Berry, 65 Me. 570.

Viewed in the light of these well recognized principles, how signally has the defendant failed to make good his defense. To permit him, when now called upon to indemnify his agents for the moneys advanced for him on the faith of his notes, to then, for the first time, disclose an illegal purpose when he employed them, and thereby defeat their claims, would be to offer a reward for deceit and render the business of agency hazardous to a degree that would absolutely destroy it.

In a case similar to this, it was held that a recovery could be had, and the fact that notes were given in settlement was held a concession that the wheat was bought for them and the contract was binding upon them. Cole v. Milmine, 88 Ill. 349; Logan v. Musick, 81 Ill. 416.

A late case in our State where a commission merchant paid out money or incurred liability for his principal in buying and selling grain at the Board of Trade in Chicago, and was allowed to recover against said principal, is Powell v. McCord, 121 Ill. 331. In fact we may safely say that no authority can be found in Illinois condemning contracts of the kind involved

Brown, Graves & Co. v. Alexander.

in this case, and there is an abundance of decisions upholding their validity, both at common law and under the stringent statute of our State.

A contract for the sale of goods to be delivered at a future day is not invalidated by the circumstance that at the time of the contract the vendor neither has the goods nor has entered into a contract to buy them, nor has any reasonable expectation of becoming possessed of them otherwise than by purchasing them after making the contract. Hibblewhite v. McMorine, 5 M. & W. 462; Cook v. Davis, 53 N. Y. 318; Smith v. Bouvier, 70 Pa. St. 325; Appleman v. Fisher, 34 Md. 540; Benjamin on Sales, 82, 83, 541, 542; Mortimer v. McCollan, 6 M. & W. 462; Tomblin v. Callen, 22 Iowa, 367.

Messrs. MARSHALL W. WEIR and TURNER & HOLDER, for appellee.

The notes sued on, being given for money due upon gambling contracts—pretended purchases and sales of grain with the intention that no grain was to be delivered, but that the deals were to be filled by adjusting the difference in prices—no recovery can be had. 2 Benjamin on Sales, 715; Irwin v. Williar, 110 U. S. 499; Pickering v. Cease, 79 Ill. 328; Lyon v. Culbertson, 83 Ill. 33; Pearce v. Foote, 113 Ill. 229; Coffman v. Young, 20 Ill. App. 77.

Appellants can not recover for commissions and disbursements, whether they acted as principals or as brokers, they knowing the nature of the transactions and helping to forward the same. Irwin v. Williar, 110 U. S. 499; Pearce v. Foote, 113 Ill. 229; Coffman v. Young, 20 Ill. App. 77; and cases cited.

PHILLIPS, J. Appellants sued out their writ of attachment against appellee, and the same was levied on lands in St. Clair county. Appellants filed their declaration, founded on two promissory notes, each of date of August 26, 1886, each due three months after date, one for the sum of $3,741.17, the other for $5,000. Both notes were made at Culpepper county, Virginia, and were made payable at Franklin Bank, Baltimore,

Maryland. Appellee appeared and filed various pleas, to some of which demurrer was sustained and issue was joined and trial had on the following pleas:

1. General issues.

2. "And for second amended plea in this behalf, defendant says, *actio non*, because he says that the several causes of action mentioned in the plaintiff's said declaration are for the same causes of action mentioned in the first two counts thereof, and not different or other causes, and that the consideration of the notes sued on herein and mentioned in said first two counts was a sum of money due and owing upon a gambling contract under which he purchased options to sell and buy grain to be nominally delivered at a future time, but with the understanding between plaintiff and defendant that no grain would be delivered under said contracts, and that said contracts were to be filled on the maturity thereof by adjusting the difference in the market values. And this the defendant is ready to verify, wherefore he prays judgment," etc.

3. "And for further plea in this behalf defendant says *actio non*, because he says that the several causes of action mentioned in plaintiff's declaration are one and the same, namely, the promissory notes mentioned in the first two counts thereof, and that the consideration of said notes was a sum of money due and owing upon a gambling contract under which he purchased options to sell and buy grain at a future time, in violation of the statute in such case made and provided; and said defendant avers that said contract is in violation of the laws of Virginia, where it is alleged to have been made, and in violation of the laws of Maryland, where said contract was specifically made payable. And this defendant is ready to verify, wherefore he prays judgment," etc.

On trial before the judge, without a jury, a verdict was rendered for defendant. The plaintiff brings this appeal. The notes were offered in evidence for plaintiff. The defendant offered no evidence as to the laws of the State of Maryland, where the notes were payable, nor of the laws of the State of Virginia, where made. The assignment of errors

must be considered with reference to the second plea, and the evidence offered thereunder. "Agreements for the future delivery of grain, or any other commodity, are not prohibited by the common law, nor by any statute of this State, nor by any policy adopted for the protection of the public. What the law does prohibit, and what is deemed detrimental to the general welfare, is speculating in differences in market values. The alleged contracts for August and September come within this definition. No grain was ever bought and paid for, nor do we think it was ever expected any would be called for, or that any would have been delivered had demand been made. What were these but optional contracts in the most objectionable sense? That is, the seller had the privilege of delivering or not delivering, and the buyer the privilege of calling or not calling for the grain, just as they chose. On the maturity of the contracts they were to be filled by adjusting the differences in the market values. Being in the nature of gambling transactions, the law will tolerate no such contracts." Pickering v. Cease, 79 Ill. 328. The case of Wolcott v. Heath, 78 Ill. 433, was one before our present statute was in force, and the court held: "What the law prohibits and what is deemed detrimental to the public interests is speculations in differences in market values, called, perhaps, in the peculiar language of the dealers 'puts and calls,' which simply means a privilege to deliver or receive the grain or not at the seller or buyer's option. It is against such fictitious gambling transactions, we apprehend, the penalties of the law are leveled."

We hold the defense set up by the second plea is one that at common law is to be held as a gambling transaction and being such, the plea presented a defense regardless of where the notes were made or were payable.

Does the evidence in this case, then, show that the notes sued on were for the consideration of "a sum of money due and owing upon a gambling contract under which he (the defendant) purchased options to sell and buy grain, to be nominally delivered at a future time, but with the understanding between plaintiff and defendant that no grain would be called

for or delivered under said contracts, and that said contracts were to be filled on the maturity thereof by adjusting the differences in the market values?" The appellee testified that the notes offered in evidence were given in consideration of other notes made by him and which were taken up, which notes so taken up, he states, were given for margins.

The appellee states that the margins were put up on option trading, and that he both bought and sold. That he gave orders to buy wheat in New York, Chicago, or anywhere. No wheat was ever delivered. He further states it was not the intention of the parties to ever deliver wheat; that no wheat was ever tendered to him on the one hand or offered by him on the other. The appellee offered in evidence numerous telegrams sent by appellants to appellee, about forty-two in number, from which we select certain ones as indicative of the others:

"Market very quiet. Scarcely anything doing. Sept. wheat $96\frac{3}{4}$ on a break would cover part Chicago short wheat and sell on advance. Where shall we write you to?"

"Bought twenty-five Sept. Chicago eighty-eight half. Will sell again on any advance."

"Sold twenty-five Oct. wheat Chicago closes weak, on report hot wheat."

"Market looks rather heavy. If advances to nine will sell again. Will make up the wheat bought to-day against the highest sale."

"Sold forty-five M. Oct wheat Chicago at ninety one-eight."

"Bought forty-five M. Sept. wheat eighty-eight Chicago. Looks for higher prices."

"Looks like a good sale in St. Louis. Might be well to hold for a profit."

These last three telegrams are of the same date.

"Bought sixty Oct. eighty-three three-eights. Think would put out again on bulge and keep short double-long here."

Eleven letters of a similar character to the telegrams, with numerous accounts of sales, were offered in evidence. The evidence shows many transactions of buying and selling grain

at widely different points—New York, Baltimore, Chicago and St. Louis—with dates and time of delivery nearly the same. The plaintiff Graves, who testifies, insists that in each case the plaintiffs were acting as the agents of defendant as a commission house, and made the purchases of grain for delivery and for grain to be sold and delivered, and that the commission house, the plaintiffs, were compelled to settle by receiving purchases on seller's option, and to deliver it to the party to whom sold, unless in the meantime it should have been settled by some other contract, and that the commission house never had any agreement with the defendant that no grain would be called for or delivered under the contracts, or that the contracts were to be filled by the settlement of the differences in the market. It does not appear from this evidence that the wheat bought or sold was in existence. It was not evidenced by warehouse receipts, nor are the rules of the Board of Trade at any point where purchases and sales were made offered in evidence. The form of buyer's contract, as shown by the plaintiff Graves in his testimony is:

"*Buyer's Contract, Baltimore Corn and Flour Exchange.* No.————                        BALTIMORE,————, 188—.

"For value received, ————, have this day bought and agreed to receive from ———— bushels of ————, Baltimore inspection, at ———— cents per bushel, delivered in elevators, at the seller's option, during the month of ———— 188—. Certificates tendered on this contract must have not less than three days free storage. In case of dispute it is mutually agreed that the matter shall be referred to the arbitration of three members of the exchange—two of the arbitrators to be respectively chosen by the parties in dispute, they to select a third—and a decision of a majority of the arbitrators shall be final and binding. This contract is to be governed by the rules, regulations and by-laws of the exchange, in force at this date. If a margin or security has been put up by ———— the decision of the arbitrators shall be made known to the committee on margins, and the committee shall sign an order for the release of the margin or security."

And in the same testimony the form of seller's contract is given as follows:

"*Seller's Contract, Baltimore Corn and Flour Exchange.*
"No. ———          BALTIMORE, ———, 188—.

"For value received, ———, have this day sold and agreed to deliver to ——— bushels of ———, Baltimore inspection, at ——— cents per bushel, deliverable in the elevators at the seller's option, during the month of ———, 188—. Certificates tendered on this contract must have not less than three days free storage.

"In case of dispute it is mutually agreed that the matter shall be referred to the arbitration of three members of the exchange, two of the arbitrators to be respectively chosen by the parties in dispute, they to elect a third, and a decision of a majority of the arbitrators shall be final and binding. This contract is to be governed by the rules, regulations and by-laws of the exchange in force at this date.

"If a margin or security has been put up by ———, the decision of the arbitrators shall be made known to the committee on margins, and that committee shall sign an order for the release of the margin or security."

These are the only forms of contract given with reference to the transactions between appellants and appellee, and unlike the case of Lyon & Co. v. Culbertson, Blair & Co., 83 Ill. 33, where the rules of the Board of Trade were in evidence. In this record the rules of the Board of Trade not being in evidence, we can only construe the transactions of the parties by the contracts as shown by the evidence in the record. And the language of the Supreme Court in Lyon & Co. v. Culbertson, Blair & Co., *supra*, is, we think, applicable. "Had the agreement required the party, before he exercised the option, to have made an offer, or at least have shown that he had the ability to fulfill his part of the agreement, and was willing to do so, then the contract would have conformed to legal principles; but, under the terms of this contract, appellees were not required to have a bushel of grain they could have delivered at the place of performance. It is true the contract speaks of wheat 'in store,' but neither wheat nor warehouse

receipts were offered. * * * The fact that no wheat was offered or demanded, shows, we think, that neither party expected the delivery of any wheat, but in case of default in keeping margins good, or even at the time for delivery, they only expected to settle the contract on the basis of differences, without either performing or offering to perform his part of the agreement; and if this was the agreement, it was only gaming on the price of wheat."

The evidence in this record does not show the tender of any wheat or any contract by any party thereto, nor does it show any party calling for wheat and ready and willing to receive the same. All the transactions seem to have been settled on the basis of differences in values. The trial court so held, and having the witnesses before the court, and finding from the evidence that the defense alleged under the second plea was a bar to the right of recovery on the part of appellants, we find no error in the record that would warrant us in disturbing the verdict. The judgment is affirmed.

*Judgment affirmed.*