## BENJAMIN F. PIXLEY *et al.*

*v.*

## CHARLES W. BOYNTON *et al.*

1. REMITTITUR—*in Supreme Court.* Under the present practice act, when the judgment in the inferior court exceeds the *ad damnum* in the plaintiff's declaration, he may remit such excess in this court before the cause is submitted.

2. BURDEN OF PROOF—*to show illegal consideration of promissory note.* Where the maker of a promissory note seeks to avoid the same on the ground that its consideration was illegal, the burden of proof is upon him to show the fact by a clear preponderance of the evidence.

3. OPTIONAL CONTRACT—*sale for future delivery.* A purchase of grain at a certain price per bushel, made in good faith, to be delivered in the next month, giving the seller until the last day of the month, at his option, in which to deliver, is not an illegal or gambling contract, and the purchaser will be entitled to its benefit, no matter what may have been the secret intention of the seller.

4. COSTS—*in Supreme Court.* Where an error is removed by a *remittitur* in this court, the costs up to such time, including the entry of the *remittitur*, will be taxed against the appellee or defendant in error.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was an action of assumpsit, brought by Charles W. Boynton, George S. Foster, and John S. Miller, partners, against Benjamin F. Pixley, Thomas W. Hall, and Joseph G. Hall, partners, upon a promissory note. The opinion of the court contains a statement of the material facts.

Mr. FARLIN Q. BALL, for the appellants.

Messrs. PRENTISS & HOOKE, for the appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The judgment in favor of plaintiffs in the court below was for $31.33 in excess of the *ad damnum* in the declaration. That sum had been remitted in this court by plaintiffs before the cause was submitted for decision. Under our present statute, this is permissible, and is in accordance with the practice that prevails.

The action is upon a promissory note, and defendants seek to avoid the payment on the ground the consideration is illegal. The special defense set up in the notice filed with the general issue is, that it was given in settlement of "differences" arising out of an optional contract in wheat, made on the board of trade, and that it was not the intention of any of the parties to the transaction to buy or sell, or deliver or receive grain, but their only purpose was to trade in "differences" in the price of grain on the Chicago market.

It will not be necessary to discuss the legal proposition, that such contracts are void, as being against a sound public morality, for the reason we do not think any such contract as defendants insist upon has been proven to have existed between the parties. The burden of proof is upon defendants to show the consideration of the note is illegal, and they ought, in a case like this, to be required to make this proof by a clear preponderance of the evidence. This they have not done.

The contract was made by Hall, one of the defendants, on behalf of Wallace, who was not himself a member of the board of trade, and could not by its usages make contracts in his own name in relation to transactions on 'change. In June, 1870, Wallace, through Hall, sold to Boynton, for his firm, 5,000 bushels No. 2 spring wheat, at $1.12 per bushel,

"seller July." Suddenly the price of wheat went up, and it was thought best to close up the matter. Accordingly, Hall, at the instance perhaps of Wallace, certainly in his interest, bought the wheat back from Boynton at an advance of fourteen cents per bushel. Neither Hall nor his firm had any real interest in the wheat, but as Hall and Boynton were both members of the board of trade, and as the contract was made in Hall's name, by his consent, and he was legally obligated to perform it, he would have been expelled had he not, in some satisfactory manner, closed up the matter with Boynton at the maturity of the contract. It was no doubt for this reason, as well as his legal liability, his firm gave the note upon which this action was brought.

A number of witnesses familiar with the rules of the board of trade were examined, and they all say this contract was in conformity with the custom of trade, and was a regular and legitimate contract. "Seller" the month, as that term is understood and used on the board of trade, is explained to mean the seller has until the last day of the month in which to make a delivery of any grain contracted to be sold. Under such a contract, as we understand the evidence, all the option the seller has is the privilege to deliver the grain at any time before the maturity of the contract. This is nothing more than a time contract, which is regarded on the board of trade and elsewhere as a legitimate and regular contract. Time contracts in relation to grain, as well as other commodities, are of daily occurrence, and must necessarily be in commercial transactions.

One witness says, the true idea of an "option" is "puts" and "calls." A "put" is defined in the evidence to be "a privilege of delivering or not delivering the grain," and a "call" is "a privilege of calling or not calling for the grain." The contract between the parties to this transaction was not an optional one, in the sense of "puts and calls." The only option the seller had was as to the time of the delivery. The

legal effect of his agreement was that he should deliver the grain contracted to be sold within a limited period.

Whatever may have been the intention of Hall or Wallace, it seems clear that Boynton understood he was to have the grain at the maturity of the contract. His good faith was manifested, in that, immediately upon selling the grain back to Hall, for Wallace, he purchased a like amount at the price he had just sold, and upon the maturity of the contract, took the wheat and paid for it. Plaintiffs were extensively engaged in shipping grain, as shown by the testimony. Boynton emphatically declares this was not a gambling transaction, so far as he was concerned, but that the grain was purchased in good faith for the legitimate purposes of commerce. There is nothing in the record to overcome his testimony in this regard.

The intention of the parties gives character to the transaction, and if either party contracted in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of the other party.

A *remittitur* having been entered, there is now no error in the record, and the judgment will be affirmed to the extent of $1000. But because there was error in the record before the *remittitur* was entered, all costs accruing in this court up to the date of entering the *remittitur*, and the costs of entering the same, will be taxed against appellees.

*Judgment affirmed.*