## Benjamin Warren, Sr., and Benjamin Warren, Jr., Partners as Warren & Company, v. Patrick Scanlan.

1. GAMBLING CONTRACTS—*What Are—Rule for Determination.*—In order to determine the character of a grain contract, it is necessary to ascertain from the evidence whether the grain was purchased with a view to realizing a profit, or whether it was understood by the parties that it was never to be delivered or received, but that one or the other would win the money from his adversary in a settlement according to the condition of the market on the last day for delivery.

2. SAME—*What is and What is Not.*—When a person purchases grain to be delivered in the future at a fixed price in the hope that it can be sold for more than the purchase price, the transaction is not illegal. The fact that the grain is to be delivered at a future day does not make it a gambling contract; it is otherwise, however, where the parties are merely betting on the market.

3. SAME—*The Transaction Must Be Mutual.*—It is not enough to show that one of the parties to a contract to buy grain intended it as a mere bet on the state of the market; in order to avoid the transaction as a gambling contract, it must be shown that there was a mutual understanding between the parties that it was intended for a mere bet on the state of the market.

4. SAME—*Secret Intention Immaterial.*—Unless there is a mutual understanding between the parties to the contract that no grain is to be accepted or delivered in any event, it is immaterial what the secret intention of one of the parties may have been.

Warren & Co. v. Scanlan.

Assumpsit.—Breach of contract. Appeal from the Circuit Court of Peoria County; the Hon. Thomas M. Shaw, Judge, presiding. Heard in this court at the December term, 1894. · Reversed and remanded. Opinion filed May 28, 1895.

G. B. Foster and Stevens & Horton, attorneys for appellants, contended that the only defense to the action must be that it was an option deal, obnoxious to the statute of the State. The only statute in the State touching these questions is Section 130, Chapter 38, Cothran's Edition, 1891, as follows:

"Whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain or other commodity * * * shall be fined not less than $10 nor more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts and shall be void."

As to the general proposition that the contract did not come within the provisions of the statute, appellants cited Bailey v. Bensley, 87 Ill. 566; Lyon v. Culbertson et al., 83 Ill. 33; U. S. Life Insurance Co. v. Advance Co., 80 Ill. 549; Miller v. Bensley et al., 20 Brad. 528; Mohr v. Miesen (Minn.), 49 N. W. Rep. 862; Colderwood v. McCrea, 11 Brad. 543; Wheeler v. McDermid, 36 Ill. App. 100; Corbett v. Underwood, 83 Ill. 324; Logan v. Music et al., 81 Ill. 415; Wolf v. Perryman (Ala.), 9 So. Rep. 148; Clark v. Faus, 7 Biss. 548; Gilbert v. Gauger, 8 Biss. 548; Jackson v. Foote, 12 Fed. 37; Bartlett v. Smith, 13 Fed. 263; Kirkpatrick v. Adams, 20 Fed. 287; Bangs v. Hornick, 30 Fed. 97; Ward v. Vosburgh, 31 Fed. 12; Lehman v. Feld, 37 Fed. 852.

In the case of Cole et al. v. Milmine et al., 88 Ill. 349, the court holds:

"Where wheat is in fact purchased by the plaintiff for the defendant upon contract between them, the fact that it is to be delivered at a future day does not bring the transaction within the prohibition of the statute in relation to gambling contracts." See Webster v. Sturges, 7 Brad. 560; Sanborn v. Benedict, 78 Ill. 309.

In the case of Pickering et al. v. Cease, 79 Ill. 330, the court holds:

"Time contracts are of daily occurrence, and must of necessity be in commercial transactions. Agreements for the future delivery of grain or any other commodity are not prohibited by the common law nor by any statute of this State, nor by any policy adopted for the protection of the public. What the law does prohibit is what is deemed detrimental to the general welfare, as speculating in differences in market prices."

The intention of the parties gives character to the transaction; and if either party contracts in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intention of the other party. Benson v. Morgan & Co., 26 Ill. App. 23; Pixley v. Boynton, 79 Ill. 351; Colderwood v. McCrea et al., 11 Ill. App. 543; Ware v. Jordan, 25 Ill. App. 535; McCormick v. Nicolls, 19 Brad. 334.

"The word 'option' as used in the statute here, taken with the context, means a mere choice, right or privilege of selling or buying, and it is the contract for such choice, right or privilege of selling or buying at any future time any commodity the statute was intended to prohibit as contradistinguished from actual sale or purchase with the intention of delivering or accepting the commodities specified." Schneider et al. v. Turner, 130 Ill. 28.

In the case of Bibb v. Allen, 149 U. S. 489, the court says:

"It is settled by the weight of authority that where a principal sends an order to a broker engaged in an established market or trade for a deal in that trade, he confers authority upon the broker to deal according to any well established usage in such market or trade."

This citation is made in reference to the transactions between Warren and Scanlan under the rules of the Board of Trade found in the record. The court further says:

"It is well settled that contracts for the future delivery of merchandise or tangible property are not void, whether

said property is in existence in the hands of the seller or to be subsequently acquired." 2 Kent's Com. 468 and authorities cited in notes; Benjamin on Sales, Am. Ed., Sections 81, 82.

" It is further well settled that the burden of proof is upon the party who seeks to impeach such transactions by showing affirmatively their illegality." Roundtree v. Smith, 108 U. S. 269; Dyker v. Townsend, 24 N. Y. 57; Irwin v. Williar, 110 U. S. 499, 507.

McCulloch & McCulloch and Dan R. Sheen, attorneys for appellee, contended that to reverse this judgment appellants must show that the money alleged to have been paid out by them was rightfully paid out under such circumstances as to show a liability therefor on the part of appellee. Lyon v. Culbertson et al., 83 Ill. 33; R. S., Ch. 74, Secs. 1–4; 1 S. & C. Stat. 754–5.

The claim is that the losses occurred on actual sales of grain, whereas the proof shows nothing but a series of executory contracts for the purchase of grain, which appellee was never called upon to perform nor was any offer of performance made to him. He was never put in default. 1 Benj. on Sales, Book II, Ch. 1; Hatch v. Oil Co., 100 U. S. Rep. 124; Dittman v. Norman, 118 Mass. 319; Powder Co. v. Burkhardt, 97 U. S. Rep. 110.

No delivery of grain is shown except in the "ringing up" process, which is no delivery at all. No rule of the Board of Trade could bind appellee to accept such delivery unless he had actual, as opposed to presumptive knowledge of the existence of such a rule. Irwin v. Williar, 110 U. S. Rep. 399.

The rule itself is illegal and void, and if business is transacted under it, the Board of Trade itself is nothing but a gigantic "bucket shop." Lyon v. Culbertson, 83 Ill. 33.

But even if the proof otherwise showed a *prima facie* case, the evidence shows conclusively that the transactions were of a gambling nature and void. Miles v. Andrews, 40 Ill. App. 155; Soley v. The People, etc., 134 Ill. 66; Soley v.

People, etc., 31 Ill. App. 242; Lyon v. Culbertson, 83 Ill. 33; Pearce v. Foote, 112 Ill. 525; Carrol v. Holmes, 24 Ill. App. 76; Snider v. Turner, 130 Ill. 28; Samuels v. Oliver, Ibid. 73; Wheeler v. McDermid, 36 Ill. App. 179; Hawthorne v. Ellis, 125 Ill. 500.

Both plaintiff and defendant must have concurred in the unlawful intent, but it is not necessary that they should have communicated that intent to each other. It may be proved in other ways. Hale v. Taylor, 45 N. H. 405.

And it is not necessary that the parties employed on the Board of Trade, to float their illegal transactions, should have known of their intent. Coffman v. Young, 20 Ill. App. 76, and authorities cited above.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellants brought this suit against appellee to recover moneys advanced by them for him at his request to pay losses in dealings conducted on his behalf on the Board of Trade in Chicago. The special defense made was that the transactions in which the moneys were advanced were of a gambling nature.

The case was tried before the court without a jury, and there was a finding and judgment for appellee.

There was no substantial controversy at the trial concerning the facts, and they were proved to be as follows: Plaintiffs were a firm engaged in the grain and commission business in Peoria, Illinois. They were not members of the Board of Trade, but did business there by placing orders for their customers with West, Andress & Co. and L. Everingham & Co., who were members, and entitled to transact business as such. Defendant was a wealthy man who had been a tradesman and farmer. He had retired from the farm to Peoria, but during the period of these transactions returned to his farm near Monica, Illinois. In 1891 and the early part of 1892, defendant at various times gave orders to plaintiff to buy specified lots of oats, corn and wheat for him on the Board of Trade, and they complied with his orders. He was

in their office almost daily while he lived in Peoria, and he advanced money to secure their agents in the purchases. He would order grain sold whenever he saw fit and plaintiffs obeyed his orders. They did not keep any account on their books of the purchases and sales, but credited him with all moneys received and charged him with the moneys paid out for him. The accounts of the purchases and sales were received by them and in every instance were delivered or mailed to him. On March 26, 1892, L. Everingham & Co. had bought on orders so given by defendant 10,000 bushels of corn and 30,000 bushels of wheat, to be delivered to them in the ensuing month of May. Prices were declining, and there was already considerable loss on that wheat. On that day one of the plaintiffs went to see defendant at his farm and consulted with him about the market prospects and what he wanted done, and what arrangement he would make about the money already due. Defendant thought that there would be an advance, and wanted plaintiffs to hold the wheat until he could get out without loss, to handle it as if it were their own, and to use their best judgment in the matter. It was then agreed that they should hold the wheat as long as they could to save him from loss. The corn was afterward sold, and without loss, and the moneys sued for were advanced for losses on the wheat.

It had been contracted for in lots of 5,000 bushels, and the sellers had a right to deliver any day in May. The wheat was all delivered to L. Everingham & Co. on different days in that month. If the wheat should be kept awaiting a better price it would be necessary to pay storage charges of one-third of a cent a bushel for each ten days, together with insurance and interest, but if it were sold for cash and a contract made for the same amount at the same price, to be delivered in the future, the only expense would be a commission of one-fifth of a cent a bushel.

Such contracts could be sold out at any time and they afforded the only economical method of carrying out defendant's orders. That method was for that reason adopted, and the lots were sold out the day following their delivery, and

the same amounts were contracted for to be delivered in July, and storage, insurance and interest was only paid for the brief time that the wheat was held in elevators. Statements of these transactions and of each subsequent transaction were furnished to defendant. Afterward plaintiffs asked defendant to give his note for losses accrued, but he did not want to give a note, and it was not insisted upon. Plaintiffs kept the wheat in that form and renewed the purchases either by the method adopted in May or by selling out and buying anew before the time for delivery arrived, until June 30, 1893, when it was sold out during a financial panic because money could not be obtained to carry it any longer, and defendant had been asked several times for money for margins, but never furnished any. The loss was $11,291.86, exclusive of interest, and was paid by plaintiffs. Wheat had steadily declined in price.

From these facts it will be manifest that plaintiffs exhibited a valid claim against defendant unless it was tainted with illegality, and that the contention here that there was a failure to prove that the money was advanced at defendant's request and in pursuance of its terms is without foundation.

In order to decide whether the defense of illegality in the contract was made out it was necessary for the court to ascertain from the evidence whether grain was purchased with a view to realizing a profit, or whether it was understood by the parties that the grain was never to be delivered or received, but that one or the other would win money from his adversary in a settlement according to the condition of the market on the last day for delivery. If defendant directed purchases of wheat to be delivered in the future at a fixed price in the hope that it could be sold at that time for more than the purchase price, the transaction would be just as legal as to contract for land or any other thing of value with the same object in view. The fact that it was to be delivered at a future day, would not make the contract a gambling one. Sanborn v. Benedict, 78 Ill. 309; Pickering v. Cease, 79 Ill. 328; Pixley v. Boynton, 79 Ill. 351; Logan v.

Musick, 81 Ill. 415; Cole v. Milmine, 88 Ill. 349. On the other hand, if the parties were merely betting on the market the transaction would be unlawful. The form of the contracts did not indicate any illegality, and the evidence for plaintiffs was emphatic that they were carried out according to their terms without other or different agreement or understanding. The claim that the contracts were in fact different from what they appeared to be seems to rest almost exclusively on testimony of the defendant that he had no intention of receiving or paying for any of the grain, and this was admitted against the objection of plaintiffs. There was no claim that such intention was ever expressed or made known in any way to plaintiffs, but if defendant had such an intention it was a secret one. It was necessary to go further than to merely show such secret intention and prove that there was a mutual understanding of that kind. Unless there was such an understanding it was immaterial what defendant's secret intention may have been. Pixley v. Boynton, *supra*. If either party contracts in good faith he is entitled to the benefit of his contract, and evidence of the secret intention of defendant to not comply with the terms of the contract did not tend to establish such mutual understanding. In the absence of any evidence that plaintiffs knew anything of his intention, the testimony should not have been admitted. Miller v. Bensley, 20 Ill. App. 528.

It has been deservedly regarded as a circumstance of great weight in some cases that the supposed purchaser was not in such circumstances as to be able to take and pay for the commodity, and the party dealing with him knew it and must have understood that he would not do so from such inability, but in this case defendant was amply able to carry out his contract. There was no substantial evidence that the transactions were different from what they were in form, and it seems to us that the judgment can not be sustained. It will therefore be reversed and the cause remanded.