Thomas A. Ennis et al., Appellants, v. Maxwell Edgar, Appellee.

Gen. No. 15,039.

1. CHANCERY—*when estoppel to deny jurisdiction arises.* If a party submits himself to the jurisdiction of the court by answering the bill, he will not thereafter be heard to question such jurisdiction.

2. MASTERS IN CHANCERY—*when taxation of fees not sustained.* The taxation of master's and stenographer's fees will not be sustained if the findings of the decree upon which such taxation is predicated are not supported by proof or by agreement of the parties shown in the record.

3. APPEALS AND ERRORS—*effect of insufficiency of abstract.* On review the record will not be examined to ascertain grounds for the reversal of a decree or judgment if the matters found in the abstract do not warrant a reversal of the conclusion of the trial court.

4. GAMBLING—*what does not taint transaction with.* Transactions in grain are not gambling in nature though so intended by one of the parties; if the other party was dealing in good faith along legitimate lines his rights cannot be prejudiced by the intentions of the other party and not acquiesced in by him.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded with directions. Opinion filed April 18, 1910.

**Statement by the Court.** Appellee is a lawyer practicing his profession in Chicago. Appellants are bankers and brokers under the firm name of Ennis & Stoppani, with offices in Chicago and New York, and are members of the New York Consolidated Stock Exchange and the New York Produce Exchange, the Chi-

cago Board of Trade and the Milwaukee Chamber of Commerce. They do a general brokerage business. In April, 1906, appellee commenced to do business with appellants. Appellants made purchases and sales, upon some of the exchanges mentioned, of stocks and grain, upon the order of appellee and for him. Between April 20, 1906, and October 3rd of the same year, the total dealings amounted in money to $83,-713.65. Appellee paid appellants at various times sums of money aggregating $2,300, and during that time he received from appellants the sum of $1,535. On closing the account October 3, 1906, there was a balance due appellee of $499.64. It will appear from the foregoing financial statement that appellee had lost some money in the deals which appellants made for him. This result it would seem was not pleasing to appellee and he made that fact known to appellants. He demanded from them payment of $2,300 and threatened unless such payment was made to procure criminal proceedings to be instituted against them on a charge of violating the Illinois statute against gambling, and to have, in virtue of such criminal proceeding, the Chicago office of appellants "raided" as a "gambling institution". In a further effort to enforce appellee's demand for $2,300 he informed appellants that he possessed "political influence", by the exercise of which he could make good his threats of "raid" and criminal prosecution. In an effort to avoid the putting into effect such threats, appellants filed their bill and asked for and obtained, without notice, an injunction restraining appellee from taking the criminal action threatened against them. The bill set out the transactions with appellee, averred they were all legitimate and not gambling transactions, and showing a balance of $499.64 in their hands to his credit, and tendered payment of the same. Appellee answered the bill, denying the legitimacy of his dealings with appellants, averring that they were all gambling transactions, charging that appellants had

received from him $3,750, and claiming that they should be required to return all moneys which he had paid to them. Appellee also filed a cross-bill setting up facts substantially as averred in his answer and praying for affirmative relief, which cross-bill appellants answered, denying that any of the transactions were gambling transactions as claimed by appellee. On motion of appellee the injunction was dissolved.

After the dissolution of the injunction the whole case, as made by the bill and cross-bill and the issues joined on each, was referred to a master to take proofs and report his conclusions of law and fact and also to report on an award of damages upon the dissolution of the injunction.

Among other findings of the master are the following: That appellants tendered appellee 10,000 bushels of oats which he had bought through them, and that appellee refused to receive them; that there is no evidence that delivery was made or offered in any of the other transactions; that on appellants' part every transaction was *bona fide;* that memorandum was put in evidence showing conclusively not only that each and every transaction was carried out as set forth in the statement, but the names of the persons to whom the sales were made or from whom the stock was bought, was given in evidence; that the transactions lacked only one feature of regularity, viz.: delivery of the commodities to appellee; and the report goes on to say "that it might be urged and cannot be denied, that all the deals in question could be enforced and if demanded the certificates of stock would be delivered in every instance". The master infers that all of the transactions were gambling and so intended by all the parties. Further finds that there is due from appellants to appellee $764.10, the difference between the sum of $2,300 received by appellants from appellee, and $1,535.90 paid by them to him; assesses appellee's damages on dissolution of injunction at $300, and recommends a decree in favor of appellee

on his cross-bill, and that appellants' bill be dismissed for want of equity. Appellants filed their objections to the master's report, which he overruled, and they were refiled as exceptions thereto before the chancellor. The exceptions were overruled and a decree entered in accordance with the findings and recommendations of the master, which also included costs taxed against appellants, including $251 for master's fees and $40.50 for stenographer's fees. The last two items of costs the decree recites are with the "consent of all the parties to this suit".

Appellants bring the record to this court for review and insist by many assignments (seventeen) of error and in argument that the decree should be reversed *in toto,* that the transactions involved are not tainted with gambling, but were legitimate dealings made in the usual course of business in accord with the rules and regulations of the various exchanges where the transactions occurred; that the master's and stenographer's fees were not taxed by agreement; that the damages for dissolution of the injunction should not have been assessed; that the decree should have been in accord with the prayer of the original bill, and that appellee's cross-bill should have been dismissed for want of equity.

F. A. BINGHAM, for appellants.

OSSIAN CAMERON and CHESTER FIREBAUGH, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

We will first pass upon what may be regarded as the subsidiary questions arising for our decision. Appellee, submitting himself to the jurisdiction of the court by answering the bill, has eliminated the question of appellants' right to maintain it. On the other hand, the correctness of the chancellor's action in dis-

solving the injunction is not challenged and the evidence on which the master based appellee's right to an award of damages for its having been improvidently granted is not abstracted. Therefore, notwithstanding the recitation in relation to such evidence in the master's report found in the abstract, we will not look into the record to find whether the evidence on such assessment sustains the master's finding. It is a rule of procedure in this and the Supreme Court, that on review the record will not be examined to reverse a judgment or decree of the trial court. If the evidence found in the abstract does not warrant a reversal, the conclusion of the trial court will not be disturbed. The taxation of master's and stenographer's fees being assigned for error, we look in vain for any evidence sustaining the finding of the decree that such order was "with the consent of all the parties to the suit". Findings in a decree, unsupported by proof or the agreement of the parties, cannot be sustained.

That appellee in his dealings with appellants was gambling we have the assurance of his testimony which remains in the record uncontradicted. But this, standing alone, does not render the transactions gambling we have the assurance of his testimony *fides* of appellants in these transactions made doubtful by the testimony of appellee, still appellants have by irrefutable and unchallenged evidence removed such doubt and clearly established, even to the satisfaction of the master, it appears from the findings of his report, that all the dealings in dispute were made by appellants in the usual course of business, and that all the stocks and grain purchased for appellee were paid for and actually received by appellants. Every transaction made for appellee, as is shown by the evidence and found by the master, was a legitimate transaction, and the names of the sellers and purchasers and the prices paid or received and the commodities sold or bought, were all disclosed by

the evidence of appellants, which remains unchallenged. But the decree proceeds upon the theory that appellee was gambling, and therefore it is assumed the taint of illegality enters into every transaction with appellants and avoids them under the statutes of this State. The courts in this jurisdiction have uniformly held the contrary to be the law. The transactions, so far as appellants were concerned, were complete, and appellee could have had delivery of any of the commodities at any time he desired them and was ready to pay for them. Because he did not desire delivery or was unable to pay in no wise affected the legitimacy of appellants' connection with the deals or any of them. As said in Pixley v. Boynton, 79 Ill. 351: "The intent of the parties gives character to the transaction, and if either party contracted in good faith he is entitled to the benefit of his contract, no matter what may have been the secret purpose or intent of the other party". The fact that the transactions were for future delivery in no way affected their legality or made them of a gambling nature. Wolcott v. Heath, 78 Ill. 437; Barnett v. Baxter, 64 Ill. App. 546; Logan v. Musick, 81 Ill. 419.

The recent case of Johnson v. Milmine, 150 Ill. App. 208, is literally on all fours with this case. The gambler was a lawyer. The brokers were sought to be tainted with gambling in the deals involved, which were many, because of knowledge imputable to them that the lawyer was gambling, and because of his known limited means, making him unable financially to care for transactions of the magnitude involved. The opinion of Mr. Justice Smith is replete with citation of authority and discussion of legal principles which are controlling of the crucial questions here involved, and to it we refer for support of this opinion.

We think this case comes directly within the holding in Pelouze v. Slaughter, 241 Ill. 215, that the fact that purchases and sales of stock made by brokers for a customer were of great magnitude, in proportion to

the wealth of the customer, does not justify an inference of an intention to settle on differences only, where there is no proof of such intention and where the stocks were actually sold and delivered or received and paid for by the brokers, and there was no time when the customer could not have paid the balance due if the value of the stocks were taken into account. Appellants filled all of appellee's orders by buying or selling the actual commodities involved in each transaction, and there never was a time during their dealings when appellants would not have delivered upon payment. The financial inability of appellee to finance the deals or the fact of his intent to gamble in every order given, can in no wise taint the appellants with the evil intent and purpose of appellee when they have, by positive evidence, shown every transaction involved to have been legitimate and transacted in the usual course of business on the exchanges where the deals were entered into. Appellants made tender of $499.64 by their bill and kept it good by again tendering that sum before the master. They are not therefore liable for costs accruing subsequent to the filing of the bill. The costs of taking testimony before the master and of the taking of depositions, including master's report and stenographer's fees, will be taxed against appellee. The decree of the Circuit Court is reversed and the cause is remanded with directions to dismiss the cross-bill of appellee for want of equity at his costs, and to enter a decree on the original bill of appellants for $499.64 in favor of appellee, and that all costs in the Circuit Court subsequent to the filing of appellants' bill be taxed against appellee.

*Reversed and remanded with directions.*